(No. 36376.

Doris Hartung *et al.,* Appellees, *vs.* The Village of Skokie, Appellant.

*Opinion filed August 28, 1961.*

BERNARD P. HARRISON, Corporation Counsel, of Skokie, (HARVEY SCHWARTZ, Assistant Corporation Counsel, of counsel,) for appellant.

WILLIAM M. HENNESSY, of Chicago, (WILLIAM J. MC-GAH, JR., of counsel,) for appellees.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

This is a direct appeal by defendant, Village of Skokie, from a declaratory decree entered by the circuit court of Cook County holding a village zoning ordinance unconstitutional as applied to the proposed use of the subject property owned by the plaintiffs and directing that plaintiffs have the right to use the property for a motel and restaurant. The trial judge certified that the validity of a municipal ordinance is involved and that the public interest requires a direct appeal to this Court.

The principal contention of appellant is that the evidence demonstrates room for a fair difference of opinion concerning the reasonableness of its residential zoning classification, as applied to plaintiffs' property, and that its legislative determination is conclusive and should not be disturbed by the courts. Plaintiffs urge that, in view of all the evidence, the single-family residence restrictions, as presently applied to their property, are arbitrary, unreasonable and confiscatory and bear no substantial relation to the public health, safety, morals, comfort and general welfare; that any reasons which may heretofore have supported residential zoning of their property have ceased to exist in view of subsequent developments. The resolution of such conflicting views is difficult and, in final analysis, must depend on the facts and circumstances of each case. *La Salle National Bank of Chicago* v. *County of Cook,* 12 Ill.2d 40.

The plaintiffs' property consists of two contiguous parcels of vacant land comprising approximately 3 acres commencing at the southeast corner of Emerson Street (a platted but unopened street) and Skokie Boulevard, running in a line east approximately 558 feet to Grosse Point Road, then in a southwesterly direction along Grosse Point Road approximately 450 feet, thence westerly about 294 feet to Skokie Boulevard. The property extends some 285 feet north along Skokie Boulevard to the point of beginning.

Skokie Boulevard, a north-south street, is 8 lanes wide and is an arterial highway carrying a heavy volume of traffic. Grosse Point Road, a two-lane major thoroughfare, runs diagonally in a northeast to southwest direction. It carries considerably less traffic than Skokie Boulevard. That portion of each parcel of the subject property fronting on Skokie Boulevard is classified R-2, Single Family Residential Use, and the portion of each parcel of subject property fronting on Grosse Point Road is classified R-1, Single Family Residential Use. The subject property is located within the triangle enclosed by Skokie Boulevard, Grosse Point Road and Emerson Street. Emerson Street, marking the northern boundary of the subject property, is approximately 575 feet north from the intersections of Skokie Boulevard and Grosse Point Road. The next east-west street north of Emerson Street is Foster. The land between Skokie Boulevard, Grosse Point Road, Foster Street and Emerson Street, while platted for residential dwelling, is unimproved. Plaintiffs' property includes all of the triangle except for a small vacant area immediately south of the property in question and a gas station at the southerly apex of the triangle where Skokie Boulevard and Grosse Point Road meet. This gas station is located on a tract extending approximately 200 feet northward from the Skokie Boulevard-Grosse Point Road intersection. Between the tracts occupied by the filling station and the plaintiffs' land is an unimproved parcel of land extending eastward from Skokie Boulevard to Grosse Point Road. This latter tract is not owned by the plaintiffs. The property in question is part of still a larger substantially vacant and undeveloped triangle enclosed by Skokie Boulevard, Grosse Point Road and Simpson Street. The only development within this larger triangle, apart from the aforementioned filling station, is a golf driving range, and amusement park and a drive-in sandwich stand located in the north end of

the triangle between Foster Avenue and Simpson Street, and between Skokie Boulevard and Grosse Point Road.

The filling station, located just to the south of the subject property is zoned for commercial use. The amusement park and drive-in are located in property zoned for commercial use on the southeast corner of Skokie Boulevard and along Simpson Street. East of the amusement park, along Simpson Street, and extending south to Foster Avenue, is the golf driving range operating in a residential zone pursuant to a permanent injunction. At the northeast tip of the triangle at the intersection of Grosse Point Road and Simpson Street is a saloon, two old farm buildings, and a corral for ponies. This latter area is classified for commercial use.

North of Simpson Street, on the east side of Skokie Boulevard, is a cemetery. North of Simpson Street, on the west side of Skokie Boulevard, is the Old Orchard Regional Shopping Center. Along the west side of Skokie Boulevard from Simpson Street south to and beyond the subject property, all of the land is classified commercial and is used for commercial purposes, including a bowling alley, gasoline filling station, restaurant and retail stores. Included in this commercial development is a motion picture theatre immediately across the street from the subject premises. Behind this commercial classified property along the west side of Skokie Boulevard and opposite the subject property is the village dump. On the east side of Skokie Boulevard, between Emerson Street and Foster Avenue to the north, the property is zoned residential; although platted in lots, with dedicated streets and alleys, this area is completely undeveloped, without pavement, sewers or water.

From Simpson Street southwesterly along the west side of Grosse Point Road to within approximately one block of the subject property, the land is zoned for commercial use. On the east side of Grosse Point Road across from

the filling station and southeast of the property in question, is the Sharp Corner School. From the Simpson Street-Grosse Point Road insection the land along the southeast side of Grosse Point Road south to within less than one block of the Sharp Corner School is zoned for commercial use. The remaining portion of the southeast side of the street to the school is zoned single-family residential and contains two such dwellings. The school serves elementary grade children who live within School District No. 68, which school district intervened in this cause. The school in question was originally constructed in 1928, and has recently been remodeled and enlarged to accommodate additional students. The area immediately surrounding this school, to the east and to the south, is zoned for and developed with some single-family residences. On the east and west street, one block south of Lyons (which abuts the south edge of the school property) there are some two-family residences. East of the school, the land is zoned for single residential use. Commencing approximately four blocks east of the subject premises, virtually the entire area thereafter to the east is improved with single-family residences.

The approximate distances between the school building on the east side of Grosse Point Road and the commercial development along the west side of Skokie Boulevard are as follows: To the theatre development 810 feet; to the bowling alley 1120 feet. The distance between the school and the amusement park located along Simpson Street is approximately 1420 feet. The distance from the school to the subject property, as well as to the filling station, is 66 feet, the approximate width of Grosse Point Road.

The plaintiffs, on or about September 30, 1958, petitioned the board of trustees of the village of Skokie for authority to erect a motel and restaurant on the subject property, which was not permitted under the existing resi-

dential zoning classifications. Pursuant to article XVII (*i.e.,* providing for a "special" or "additional" use) of the 1956 zoning ordinance of the village of Skokie, the petition was referred to the village plan commission, which, after a public hearing, unanimously recommended that the request be granted. On May 23, 1959, however, the Skokie village board of trustees rejected the recommendation and, by a vote of four to three, refused to grant the authority to construct a motel and restaurant. The plaintiffs then filed the present action.

Testifying on behalf of the plaintiffs was Paul Hedden, who, shortly prior to the filing of this cause, had been commissioned by the defendant, Village of Skokie, to make a study of an area within which the Simpson-Grosse Point Road—Skokie Boulevard triangle is located. Both in his report and testimony he indicated that the area south of Simpson Street, including the subject property, was specifically suited to an "institutional commercial use," which would include motel and restaurant use, and that the subject property was not suited for residential use. Another witness for the plaintiffs, William Brinkman, a real-estate broker and appraiser, testified that he took a traffic count on Skokie Boulevard and estimated there were 5600 vehicles passing the subject property in a twelve-hour period, and there were 1600 vehicles along Grosse Point Road passing the subject property in the same twelve-hour period. He further testified that the value of the plaintiffs' property for residential use under its present zoning classifications was $60,000, while its value for motel and restaurant purposes would be $190,000.

Various witnesses for the defendant, Village of Skokie, and intervening defendant, Board of Education, School District No. 68, in summary testified that while the school property would not be depreciated if a motel and restaurant were constructed, nevertheless, such use would constitute

a negative or detrimental influence upon the Sharp Corner School, which is located across Grosse Point Road, approximately 66 feet to the southwest of the subject property. Among the reasons given by the witnesses for their opinions was that the optimum surroundings for a school are residential or a park area, free as much as possible from industrial odors or fumes; that a motel and restaurant would attract students into unsupervised activities, whereas the preferable administration of students' activities, including eating, recreational activities, and after-school activities, is at the school itself under the supervision of school authorities; that children tended to loiter in a "loose" atmosphere; that they will be crossing Grosse Point Road, which is an unprotected highway; that transients who come to a motel and restaurant may constitute a hazard to children; that strangers should not be brought into contact with children while at school.

The record does not indicate plaintiffs offered any direct evidence in opposition to the foregoing. It appears, rather, that their position is one of argument that the adverse effects are minimal and that the nearby commercial zoning complements the school use. Defendant concedes that the commercial area on the west side of Skokie Boulevard and the enterprises along Simpson Street have not been a problem to the operation of the school district, although upon occasions there have been instances of minor nuisance and concern over vending machines located at the gasoline station across the street from the school.

The zoning expert, George Kranenberg, testifying on behalf of the defendant, stated that the highest and best use of the property in question would be for multiple residential dwelling units or high rise development; that he would be opposed to a motel on the subject premises inasmuch as the predominant use and zoning of land around the subject site was residential. He significantly admitted

on cross-examination however, that the subject property was not suitable for the single-family residential use for which it is zoned.

On the basis of substantially the foregoing evidence, in addition to exhibits submitted, the master recommended the R-1 and R-2, single-residence ordinances be decreed unconstitutional as applied to the subject property. He further recommended that because article XVII of the village zoning ordinances provides, as a prerequisite to the building of a motel anywhere in the village, the approval of the village trustees and president acting upon the recommendation of the plan commission, and there being no showing that the refusal of the trustees and president to give their approval was unreasonable or arbitrary, that such refusal barred plaintiffs' right to construct a motel. The chancellor, in partially overruling the master's report, decreed the zoning ordinance null and void as applied, and granted plaintiffs the right to use all or any part of their property for a motel and restaurant. The defendant, Village of Skokie, here appeals from the decree. Intervening defendant, Board of Education, School District No. 68, did not join in the appeal.

Appellant's contentions relative to the constitutionality of the single residential zoning are premised upon well known and established principles: a zoning classification is presumed to be valid and should be disturbed only if by clear and affirmative evidence it is shown to be arbitrary or unreasonable; the fact the property would be more valuable if zoned for other purposes is not decisive; and the court shall not overrule the decision of a municipal authority where the reasonableness of the ordinance is fairly debatable, although a difference of opinion does not require a finding that the reasonableness of the ordinance is debatable. (*E.g., La Salle National Bank* v. *City of Chicago*, 4 Ill.2d 253; *Illinois National Bank & Trust Co.* v. *County*

*of Winnebago,* 19 Ill.2d 487.) Equally well established are these significant factors in determining the validity of a given zoning of limitation: the character of the neighborhood; the extent to which the value of the subject property is diminished by the limitations; the extent to which the removal of the limitation would depreciate the value of other property in the area; the suitability of the property for the zoned purposes; existing uses and zoning of nearby property; the length of time under the existing zoning that the property has remained unimproved, considered in the context of land development in the area; the relative gain to the public as compared to the hardship imposed on the individual property owner; and the extent to which the ordinance promotes the health, safety, morals or general welfare of the public. (*E.g., Myers* v. *City of Elmhurst,* 12 Ill.2d 537; *La Salle National Bank of Chicago* v. *County of Cook,* 12 Ill.2d 40; *Wehrmeister* v. *County of Du Page,* 10 Ill.2d 604.) No one factor is controlling but each must receive due consideration. *La Salle National Bank of Chicago* v. *County of Cook,* 12 Ill.2d 40.

The physical characteristics of the neighborhood and other evidence with great clarity indicate that the present residential zoning classifications do not reflect the use, development or growth trend of the surrounding area. Defendant's expert witness corroborates the unsuitability of the subject property for the zoned purposes. Although since 1920 the major portion of the area circumscribed by Skokie Boulevard, Simpson Street and Grosse Point Road, within which the subject property is located, has been zoned residential, no such use or development has occurred. Rather, whatever development took place has been to the contrary. In marked contrast to the commercial uses along the west side of Skokie Boulevard, there appears to be no single-family residential use or development along the east side of that boulevard, in the vicinity of the subject prem-

ises. In addition, as we have stated on previous occasions, the existence of heavy traffic conditions on a thoroughfare scarcely constitutes an argument in support of a residential classification. (*E.g., Dalkoff* v. *City of Rock Island,* 17 Ill.2d 342.) The present cause is not, therefore, analogous to those cases in which the extensive area zoned and developed with residential use is adjacent to the subject property. *E.g., La Salle National Bank* v. *City of Chicago,* 6 Ill.2d 22; *Liberty National Bank of Chicago* v. *City of Chicago,* 10 Ill.2d 137.

Although defendant relates the presence generally of single-family residences to the east and south of the subject premises, it is significant to note that no evidence of depreciating value of these residences, or, for that matter, any neighborhood properties, is suggested. The conspicuous absence of such evidence renders reasonable inferences that the subject property is either sufficiently contained by highways separating it from the pertinency of such use and development, or that the nature of the proposed use in the context of total area development, including nearby commercial zoning and uses, is not obnoxious or materially detrimental to nearby residential use. The chancellor's determination that the subject property takes its character from the commercial uses of land within the previously mentioned triangle and adjacent area along Skokie Boulevard and not from any existing single residential characteristics is adequately sustained by the evidence. The evidence further indicates the proposed use would in no pecuniary manner be harmful to any existing residential character of the neighborhood and that, if anything, it would tend to increase the value of undeveloped property. The evidence of existing and growing commercial use and development in the adjacent area as opposed to nonresidential use, and/ or, at most, residential use unaffected by the proposed commercial use, is pertinent indication that the proposed enter-

prise is compatible with the character of use and development in the area.

The unrefuted hardship to the plaintiffs is evidenced by testimony indicating the value of the subject property for residential purposes to be $60,000, while its value for motel and restaurant purposes would be $190,000. Other uncontradicted evidence offered by the plaintiffs shows they had contracted to sell the land for motel purposes a year and a half ago before the master's hearings for approximately $150,000.

It is argued that the presence of the school in relation to the subject property and its contemplated use poses a sufficiently definite and real danger to the public health, safety, comfort, morals and general welfare as to outweigh and justify the hardship imposed upon plaintiffs. Giving consideration to the size and nature of the proposed use of the plaintiffs' property, it is reasonable to conclude that the additional vehicular traffic, if any, created by such use will indeed be a minor factor in the total picture. The proofs adduced by the intervening defendant School District, which did not join in the present appeal, suggest that the danger to school children crossing Grosse Point Road already exists and has been recognized by the school authorities. There is little reason to believe that precautions thus far taken could not, with a comparative minimum of difficulty, be further adapted if need be. Although youth is a vital and integral segment of our community life and must be given an atmosphere within which to become responsible members of society, (*Bohan* v. *Village of Riverside,* 9 Ill.2d 561,) the evidence adduced of a detrimental aura surrounding the existence of a motel and restaurant upon the subject premises is far too uncertain or minimal when contrasted to the apparent and uncontradicted unsuitability of the subject property for the purposes zoned and the equally certain financial hardship imposed upon plaintiffs. Evi-

dence of some adverse effect clearly does not require a finding that the existing restrictions are reasonable. (*Illinois National Bank & Trust Co.* v. *County of Winnebago,* 19 Ill.2d 487.) It appears to this court that any gain or inconvenience to the public from a continuation of present restrictions is small when compared with the hardship imposed upon the plaintiffs. Where such a situation prevails, the courts are fully justified in declaring the ordinance unreasonable, confiscatory and void. (*Krom* v. *City of Elmhurst,* 8 Ill.2d 104; *Tower Cabana Club, Inc.* v. *City of Chicago,* 5 Ill.2d 11.) This is especially true when the proof shows that the values of the surrounding properties will not be seriously, if at all, affected by the proposed use. *Myers* v. *City of Elmhurst,* 12 Ill.2d 537.

Appellant's final argument is directed to the provisions of article XVII of the Skokie zoning ordinance. It is argued that under the provisions of this article, plaintiffs initiated their request for a motel and that, irrespective of what the present zoning of the plaintiffs' property might be, the affirmative action of the board of trustees was required for the erection of a motel on the plaintiffs' property; that the special use technique has been approved by this court (*Kotrich* v. *County of Du Page,* 19 Ill.2d 181,) that the considerations regarding the plaintiffs' right to a motel under the provisions of article XVII are separate and severable from the considerations regarding the reasonableness of the present single residential zoning of the plaintiffs' property; and that plaintiff has not shown the unreasonableness of such refusal. Article XVII of the 1956 zoning ordinance of the village of Skokie authorizes the board of trustees to pass upon the propriety of certain buildings and uses, including motels, "in any district from which these are prohibited or limited by this Ordinance." The language of the Skokie village ordinance and interpretation given it are in keeping with the concept of the

special use as discussed in *Kotrich* v. *County of Du Page,* 19 Ill.2d 181. But, as the opinion in that case shows, our approval of the special use technique does not mean that a determination to permit or to deny a special use is beyond judicial review.

Where, as here, the application for a special use has been rejected, plaintiffs have the right to challenge the constitutionality of the underlying zoning classification.

Under the facts here presented, the relief granted by the chancellor is justified. *Sinclair Pipe Line Co.* v. *Village of Richton Park,* 19 Ill.2d 370; *Nelson* v. *The City of Rockford,* 19 Ill.2d 410.

The decree of the circuit court of Cook County is affirmed.

*Decree affirmed.*