(No. 36965.

Samual A. Ward *et al.*, Appellées, *vs.* The Village of Skokie, Appellant.

*Opinion filed November 30, 1962.*

Klingbiel and House, JJ., specially concurring.

Marvin J. Glink, Corporation Counsel, of Skokie, for appellant.

Paul Peter Black, of Chicago, for appellees.

Mr. Justice Hershey delivered the opinion of the court:

The village of Skokie appeals from a judgment of the

circuit court of Cook County declaring unconstitutional a 1957 amendment to its zoning ordinance, as applied to the property in dispute. The appeal is direct to this court, the trial judge having certified that the validity of a municipal ordinance is involved and that the public interest requires direct appeal.

Plaintiffs are owners of vacant land fronting on the west side of Skokie Boulevard between Jerome Street and Birchwood Avenue. They desire to erect a motel thereon. Their property is situated in a B-2 Commercial District, in which motels were permitted under the Skokie zoning ordinance as it existed prior to October 1, 1957. On that date the amendment in question was adopted whereby motels were removed from the list of permitted uses in a B-2 district and placed in a "Special Use" category. Under the ordinance as amended the use of land for motel purposes is prohibited except as may be authorized by special permit from the president and board of trustees.

It is provided that the plan commission may recommend a motel in cases where it finds (a) that a motel would be compatible with existing and possible usage in the immediate area, (b) that the proposal for routing traffic from the principal vehicle routes in and adjacent to the village to and from the proposed motel will not interfere with the flow of traffic on the designated streets, (c) that the area of land for the motel shall be not less than 500 square feet of land per unit and that no structure is within 50 feet of a residential district line, (d) that specified numbers of off-street parking, loading and reception spaces shall be provided, (e) that no structure be erected closer to the street line than 40 feet and no curb cut shall exceed 20 feet in width, (f) that all external and flood lights be so located and focused as not to shine beyond the limits of the property, and (g) that signs shall not be flashing or intermittent and shall conform to specified size and height limitations. In the present case, the plan commission recommended the proposed motel.

The village board of trustees rejected the recommendation, and refused to grant permission.

Skokie Boulevard, on which the subject property is located, is a public street running in a north and south direction and is a heavily traveled traffic artery. Approximately 175 feet north of plaintiffs' premises Skokie Boulevard intersects with Lincoln Avenue. Lincoln Avenue is a public street running in a northwesterly and southeasterly direction and is also heavily traveled as a traffic artery and carries a large amount of vehicular traffic. Approximately 400 feet north of plaintiffs' premises, Skokie Boulevard intersects with Howard Street which runs in an east and west direction and also carries vehicular traffic. In the immediate vicinity of plaintiffs' property on the east side of Skokie Boulevard there is a cut-rate gasoline station with an auto mechanic repair shop. Directly across from plaintiffs' property is a drive-in restaurant and south of plaintiffs' property on the east side of Skokie Boulevard is a large office building containing the home offices of the Allstate Insurance Company. Immediately south of plaintiffs' property on the west side of Skokie Boulevard is an office building. North of plaintiffs' property on the west side of Skokie Boulevard is an animal hospital. At the intersection of Skokie Boulevard and Howard Street there is a Shell gasoline station on the northwest corner and a large restaurant on the northeast corner. There are many other commercial and manufacturing uses on Lincoln Avenue and Skokie Boulevard within a distance of one thousand feet of plaintiffs' property. To the west of the property there is an alley, beyond which is a highly developed residential area known as Fairview North.

George H. Kranenberg, a planning and zoning consultant, testified in behalf of the plaintiffs that the area in which the subject site is contained is a broad strip devoted to commercial and manufacturing uses, storage and warehousing, experimental laboratories, *etc.* He further testified

that the whole broad area west of the site is a singe-family residential area. He stated that in his opinion the property if used for a motel would be compatible with the uses permitted in the district and would have no effect on the health, welfare and morals of the community.

Certain educators testifying for defendant expressed the opinion that the proposed motel might or could have an effect on the morals of students, in view of the fact that one of the high schools is located about 100 feet north of Howard Street on Lincoln Avenue, close to the subject property. A consulting engineer testified that in his opinion a motel would not be compatible with the residential district across the alley to the west.

The village contends that the reasonableness of the ordinance as applied here is fairly debatable, and that the circuit court erred in not finding that the subject property takes its character from the residential area to the west, with which a motel use would be incompatible. We cannot accept the contention. The commercial character of Skokie Boulevard in the vicinity of this property is beyond dispute, and on this record the presence of single-family residences to the west, and the nearby location of a school, do not make reasonable the prohibiting of a use entirely in keeping with such commercial character. Under circumstances undistinguishable in essence from those in the present case, we have recently held void this identical ordinance as applied to motel use of certain property along Skokie Boulevard. (*Hartung* v. *Village of Skokie*, 22 Ill.2d 485.) In answer to contentions similar to those advanced by the village here, we set forth the applicable rules of law and the factors to be considered in determining validity. It is unnecessary to repeat them here. As we observed in the *Hartung* case, "the evidence adduced of a detrimental aura surrounding the existence of a motel and restaurant upon the subject premises is far too uncertain or minimal" to sustain a restriction so completely out of keeping with the character

of adjacent uses and of those to which the property and its location are suitable.

The action of the village board of trustees in denying the proposed use was unreasonable, and the circuit court correctly held the amendatory ordinance arbitrary and void as applied to plaintiffs' property.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

Mr. JUSTICE KLINGBIEL, specially concurring:

I cannot accept the court's opinion, which I think misses the issue in the case. Ignored are the provisions of article XVII of the ordinance, making every use of land for motel purposes subject to special permission by the village board. The case is decided as if these provisions were not present at all, the amendment consisting merely in changing article X so as to eliminate motels as one of the permitted uses in a B-2 commercial district. If such were the extent of the amendatory ordinance, and the usual issue were presented whether the general restriction, though valid in its terms, is invalid in the particular application, I would concur in the opinion of the court. For reasons stated therein the application of such a prohibitory ordinance to plaintiffs' property would be unreasonable and arbitrary.

But such are not the terms of this ordinance at all. The amendment does not merely prohibit motel use in a B-2 commercial district but makes it a subject of special permit on a parcel-by-parcel basis. What is involved here is the special permit procedure, or the attempt of a legislative body to assume a power, in its uncontrolled discretion, to grant or deny the right to this kind of land use whenever it is sought to be exercised. Section 1 of article XVII of the ordinance says that "The President and the Board of Trustees of the Village of Skokie may, by special permit and subject to such protective restrictions that are deemed

necessary, authorize the location, extension or structural alteration of any of the following buildings or uses, or an increase in their height, in any district from which these are prohibited or limited by this Ordinance." There follows a list of fifteen different kinds of use, including motels. That part of the amendment in question deleting motel use as a permitted one in B-2 districts is inseparably connected with that part placing it under this special permit procedure and can properly be considered only in conjunction therewith.

The difference is far more than a mere choice of grounds for invalidity. Since the zoning enactment must be valid in its terms before any question can be reached as to its validity in the particular application, the opinion in reality is adjudicating the propriety of placing motel use in a special permit category. And it is doing so without either discussion or the citation of authority.

As to the validity of a special permit procedure I think we should repudiate both *Hartung* v. *Village of Skokie,* 22 Ill.2d 485, where the question was similarly side-stepped, and *Kotrich* v. *County of Du Page,* 19 Ill.2d 181, where a special permit procedure for country club use was approved "as a means of implementing" the zoning powers conferred by statute. As the dissent in the latter case pointed out, there is nothing in the enabling statute which even remotely purports to authorize this kind of procedure. The scope of delegated powers does not extend to whatever may be convenient as a means of implementing them. The rule is too familiar to require citation that a municipality has only such powers as the legislature has expressly conferred upon it, or such as are necessarily incident to powers expressly granted. In my opinion the adoption of a parcel-by-parcel method of regulation can hardly be described as incident to zoning powers. Rather it is a substitute for such powers which, if sustained in principle, will eventually

displace the more difficult and cumbersome method of establishing districts with known uses. Zoning, as the name itself imports, is regulation by districts and not by individual pieces of property. (*Weglarz* v. *Village of Villa Park,* 21 Ill.2d 202; *City of Aurora* v. *Burns,* 319 Ill. 84, 98.) The statute authorizes corporate authorities to divide the municipality into districts and to prohibit uses incompatible with the character of those districts. (Ill. Rev. Stat. 1961, chap. 24, par. 11—13—1.) It also authorizes them to provide for the allowance of variations in cases of particular hardship. (Ill. Rev. Stat. 1961, chap. 24, par. 11—13—5.) It says nothing about providing for uses "by special permit."

Even if the enabling act authorized municipalities to make provision for special exceptions, the ordinance providng therefor would have to state the general facts or conditions under which exceptions would be permitted. Thus in *Application of Devereux Foundation,* 351 Pa. 478, 41 A. 2d 744 (1945), an educational institution for mentally deficient children was granted an "exception," enabling it to erect a dormitory in a residential district. The ordinance empowered a Board of Adjustment to hear and decide special exceptions and also to grant a variance where literal enforcement would cause unnecessary hardship. It was held that the decision could not be sustained as a special exception because no rules had been prescribed to govern such action, and that it could not be upheld as a variation because the evidence failed to establish the requirement of unnecessary hardship. On the former point the court declared "We come to the question whether the Board of Adjustment was warranted in granting what it terms an 'exception,' and on that basis permitting the issuance of the certificate of occupancy requested by the Foundation. The Act of July 1, 1937, P.L. 2624, which authorizes townships of the second class to adopt and en-

force zoning ordinances, provides in Section 7 that the board of township supervisors may appoint a board of adjustment and may provide that 'said board of adjustment may in appropriate cases, and subject to appropriate conditions and safeguards, make special exceptions to the terms of the ordinance in harmony with its general purpose and intent and in accordance with general or specific rules therein contained.' As far as the terms of the Easttown Township ordinance appear in the record there are no rules therein contained in accordance with which special exceptions may be made. An 'exception' in a zoning ordinance is one allowable where facts and conditions detailed in the ordinance, as those upon which an exception may be permitted, are found to exist."

It will be noted that the Pennsylvania statute specifically authorized the granting of special exceptions. Yet the local authorities were without power until rules were prescribed by ordinance. Illinois does not even have a statute on the subject. Yet the local authorities may provide for the granting of these dispensations and do so without stating any rules whatever.

Even if there were a statute purporting to authorize ordinances such as the one in this case its constitutionality would be open to serious question. The granting of special permits of this kind is an administrative or quasi-judicial function which can be exercised only in accordance with prescribed rules or standards. Ordinances providing for an unrestricted power to approve or reject are in violation of basic constitutional protections and cannot be sustained. In *Concordia College Institute* v. *Miller,* 301 N.Y. 189, 93 N.E.2d 632 (1950), a zoning ordinance of the village of Bronxville, New York, permitted educational buildings in residence districts. In 1941 an amendment was adopted removing them from the list of permitted uses but allowing the board of appeals to grant special permits with the consent of 80% of the owners in the particular square block.

The amendment was held void, first because of the provision requiring consents of neighboring owners, and second, because even without this feature "the board of appeals in the instant case was given no standards or guides to exercise its discretion as to what 'educational, religious or eleemosynary purposes' may be permitted. Respondent in his brief suggests numerous instances of educational institutions which he deems objectionable, yet the board is given no guide; to it is committed an unfettered and unrestricted discretion to approve or reject proposed educatonal uses. It has been repeatedly held that this may not be done." (Citations omitted.) (93 N.E.2d at 636.) It was further held that invalidity of the special permit provision carried with it the invalidity of the accompanying repealing provisions, since the local legislature clearly did not intend to bar educational use but only to make it subject to special permit, and that the pre-existing provisions of the ordinance remained in effect insofar as the user in question was concerned. I think a like result should be reached in the case at bar. The 1957 amendment in its entirety ought to be declared invalid, leaving motels as permitted uses in commercial districts.

In *State ex rel. Synod* v. *Joseph,* 139 Ohio St. 229, 39 N.E.2d 515, a zoning ordinance placed a number of uses, including churches, in a "special use" category such as that in the case at bar. A permit to build a church at a desired site was refused, and an action in *mandamus* was brought to compel its issuance. The relator contended, *inter alia,* that the special use provisions were unconstitutional because they lacked any standard or guide to govern the exercise of the power. The court held that was no standing to raise the objection, since "the relator cannot be heard to question the validity of the very power the exercise of which relator is, by this action, asking the court to compel." In so holding, however, the court expressed "doubt as to the constitutionality of this portion of the

ordinance by which the legislative body of a municipality has sought to delegate to itself, acting jointly with others in an administrative capacity, an unqualified permit-issuing power unaccompanied by any legislative prescription of the circumstances and standards which shall govern its exercise."

It is no answer to say that standards need not be prescribed because in this case the power is vested in a legislative body rather than an administrative one. Instead of obviating the objection this aggravates it. If a body is to act in an administrative capacity the law is clear that standards must be prescribed for the decision of particular cases. If it is acting in a legislative capacity it has no business deciding particular cases at all.

It is not a part of the legislative function to grant permits, make special exceptions, or decide particular cases. Such activities are not legislative but administrative, quasi-judicial, or judicial in character. To place them in the hands of legislative bodies, whose acts as such are not judicially reviewable, is to open the door completely to arbitrary government. I need not dwell at length on the obvious opportunity this affords for special privilege, for the granting of favors to political friends or financial benefactors, for the withholding of permits from those not in the good graces of the authorities, and so on. The rule is familiar enough that courts may not inquire into the motives or reasons on which the legislative body acted. See *Village of Justice* v. *Jamieson*, 7 Ill. App. 2d 113.

It is because of this immunity from review that legislative bodies must confine themselves to the prescribing of general rules. If they may undertake to confer upon themselves authority to decide what in fact amount to individual or particular cases, the foundations of our legal system will fast disappear.

Concededly it is difficult in zoning matters to formulate

a precise test separating legislative from administrative or quasi-judicial functions. For one thing the legislative function of laying down general rules or regulating by disstrict becomes less clear cut in its nature as the size of the district or the number of people affected decreases. It seems to me, however, that there can be no reasonable doubt about the special permit power with which the village attempts to invest itself here. Legislation is essentially prohibitory, operating by laying down general rules. It does not consist in the *permitting* of conduct or the granting of individual relief. Legislative bodies are not equipped, except in a very broad and general way, to ascertain factual questions which depend upon evidence of individual circumstances. Their function is not to grant permits but to say what facts and conditions should warrant the granting of permits. *Stone* v. *Cray,* 89 N.H. 483, 200 A. 517 (1938).

What is an application for special permit but a particular case? The granting or refusal of the permit does not lay down a rule or prescribe any conditions. It is simply a decision on a concrete set of facts, affecting the property of particular parties only. It is the nature of the proceeding, not the identity of the body assuming to act in the matter, which should determine the necessity for standards. Otherwise basic constitutional protections can readily be circumvented by the simple expedient of placing quasi-judicial functions in a legislative body.

I do not suppose that a power to *prohibit* designated uses on a parcel-by-parcel basis would be upheld. Municipalities could hardly authorize themselves to prohibit, by special restriction, the use of land for motel purposes in any district in which they are permitted, even though in a particular case a general prohibition of motel use in the district would be reasonable as applied to the tract in question. But the same result is reached by everywhere prohibiting motel use, and then providing that it may never-

theless be permitted on a parcel-by-parcel basis. From the record in the case at bar it appears that motels are no longer permitted as a matter of right in any district of the village. Instead they may, by special permit, be located "in any district from which these are prohibited." In other words, everywhere in the village motels, among other uses, are by special permit only. In my view this partakes far too much of the authoritarian formula under which everything that is not permitted is forbidden. A special prohibition procedure would be bad enough. A blanket prohibition coupled with special permit procedure is worse. But in either case the element of generality essential to valid legislation is lacking.

It seems to me that the vital issues involved here have not been adequately faced, let alone decided. With nothing more than a reference to the special permit provisions, the court in the present case proceeds to consider the propriety of the particular denial, on the necessarily implicit assumption that the ordinance itself is unobjectionable. In effect the opinion approves, *sub silentio,* an ordinance which in my opinion not only finds no sanction in the enabling statute but which flagrantly ignores the basic requirements of due process.

The result of course is that these arbitrary provisions remain undisturbed, obliging the next unfortunate owner to fight out the question of constitutional reasonableness as to his particular property, and so on as to every person who is denied the right to put up a motel.

I think that the real question of validity should be faced, and that the amendatory ordinance should be declared invalid in its terms.

Mr. JUSTICE HOUSE joins in this concurrence.