La Salle National Bank, as Trustee under Trust No. 3645, Plaintiff-Appellee, v. City of Chicago, a Municipal Corporation, et al., Defendants. On Appeal of City of Chicago, Appellant.

**Gen. No. 49,648.**

First District, First Division.

July 30, 1965.

Rehearing denied September 7, 1965.

John C. Melaniphy, Corporation Counsel, of Chicago (Sydney R. Drebin and Marsile J. Hughes, Assistant Corporation Counsel, of counsel), for appellant.

Ross, Hardies, O'Keefe, Babcock and McDugald, of Chicago (Jack M. Siegel, of counsel), for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court.

The defendant, City of Chicago, appeals from a declaratory judgment holding that the city's zoning ordinance, as applied to the plaintiff's property is unreasonable, arbitrary and void insofar as it restricts the development of the property to R–1 single family residence district uses, and insofar as it prevents the development of the subject property for uses permitted in the R–7 general residence district of the zoning ordinance.

The issues here involved are the correctness of the judgment in holding the provisions of the applicable zoning ordinance void insofar as it applies to the subject property, and of the relief ordered by the court after it determined that the existing zoning ordinance was invalid.

The subject property is presently vacant and is located at 4226 North Hazel Street in Chicago. It was acquired by David and Tobina Bloom in 1930 and placed in a land trust with plaintiff bank as trustee.

370

Bonnie Heller, daughter of the Blooms, is the sole bene-
ficial owner. The family occupied a two and a half
story single family residence on the property from
1930 until it was gutted by fire in 1960. In 1959 an
application for rezoning to R–7 was made but denied
by the city council. Pursuant to a demolition permit
issued by the city, the residence on the land was
demolished in February 1962 and the property has
been vacant since.

The subject property is an irregular quadrilateral,
the north and south lines of which are parallel but
of unequal length, the north side being 198 feet and
the south being 194.84 feet. The west line is at right
angles to the north-south sides and is 50 feet. Due to
the angle of Hazel Street which runs northwesterly
and southeasterly, the east side of the lot is 50.40 feet.
The total lot area is 9,775 square feet. The east 163
feet of the property is zoned for R–1 Single Family
Residence District. The remaining 30 feet is zoned
B4–4 Restrict Service District.

The owners of the property seek to develop it with
a new building to be used as a residence for senior
citizens. The types of units proposed would have an
area of 375 square feet, contain bedrooms and living
quarters with private bath and, plaintiff urges, would
fall within the zoning ordinance's definition of lodg-
ing rooms. Plaintiff further stated that the plans do
not meet the requirements of dwelling units under
the ordinance because no cooking facilities are pro-
vided but that, however, the proposed building would
meet the definition of "apartment hotel" under the
ordinance. Lodging houses and apartment hotels un-
der the Chicago Zoning Ordinance, plaintiff contends,
are permitted uses in the R–4 to R–7 general resi-
dence districts.

In the amended complaint filed March 21, 1962, plaintiff alleged that the highest and best use of the property is for an apartment hotel for senior citizens and for this purpose the property would have a large and substantial value. After reciting the zoning and uses of adjoining property and property in the immediate vicinity, the amended complaint further alleged that plaintiff had a great need to improve the property "in the manner as aforesaid" and should the zoning ordinance be construed as to prevent "the utilization of the said property, as proposed," it would constitute an unwarranted, unreasonable, unconscionable and capricious exercise of legislative power, tending to deprive plaintiff of property without due process of law and such action would be void. The complaint prayed the court declare that plaintiff have a clear and legal right to erect "an apartment hotel for senior citizens" on the property; that the present zoning be declared void; and that the court grant such other and further relief in the premises as the court shall deem meet and proper.

Upon issues drawn and after a trial thereon the court entered the judgment order appealed from. The order found and decreed that the zoning ordinance as applied to the subject property was void insofar as it restricted the development of the subject property to "R–1" Single Family Residence District uses under the terms of the ordinance and insofar as it prevented the development of the property for uses permitted in the "R–7" General Residence District of the ordinance, and that plaintiff had a clear and legal right to improve the property in compliance with the provisions of the City's Building Code and of the "R–7" General Residence District classification. In the order, the court specifically decreed that it did not approve the plans submitted by the plaintiff for an apartment hotel for senior citizens.

372

The City, challenging the relief granted by the judgment order, contends that the trial court erred when, after denying plaintiff's proposed use, it rezoned the subject property from an R–1 District use to an R–7 District use; that the court, without pleadings or proof to support its decree, substituted its judgment for that of the City Council of Chicago and thereby improperly invaded the legislative prerogative of that body.

In Sinclair Pipe Line Co. v. Richton Park, 19 Ill2d 370, 167 NE2d 406 (1960), the Supreme Court of Illinois reviewed its previous decisions as to the kind of relief to be awarded in a zoning case. The problem was a recurrent one and the court prior thereto had not manifested an unwavering attitude regarding such relief. The court reviewing the previous cases, held that the ultimate legal determination that must be made in every case is whether the existing restrictions on the use of the land in question are arbitrary and unreasonable. On page 378, the court said: "In reaching the conclusion that a zoning ordinance is void as to specific property, however, the court must decide whether the restriction has a basis in public health, safety and welfare, in the light of the uses to which surrounding property is or may be put, the care with which the community has undertaken to plan its land use development, and the evidence or lack of evidence of community need for the use proposed by the plaintiff. Normally the land owner is interested particularly in a specific use which he proposes, and so it is natural that he will try the case and the judge will reach his decision in terms of the reasonableness of excluding that specific use." Further reviewing the situation, the court continued: "Because zoning cases are tried in this manner, two equally undesirable consequences may ensue if, following the approach of the LaSalle Bank

373

case [LaSalle Nat. Bank v. City of Chicago, 4 Ill2d 253, 122 NE2d 519 (1954)], the property is left unzoned as the result of a decree declaring a zoning ordinance void. The municipality may rezone the property to another use classification that still excludes the one proposed, thus making further litigation necessary as to the validity of the new classification . . ." and the other possibility, "that a decree which was induced by evidence which depicted a proposed use in a highly favorable light would not restrict the property owner to that use, and he might thereafter use the property for an entirely different purpose."

In its conclusion regarding this problem, the Supreme Court said that it is appropriate for a court to avoid these difficulties by framing its decree with reference to the record before it, and particularly with the record offered at the trial. In cases where a specific use was contemplated and the record was shaped in terms of that use, the relief awarded may guarantee that the owner will be allowed to proceed with *that use* without further litigation and that he will not proceed with a *different use*. If the land owner asserts a broader challenge in terms of a class use, the decree may be shaped accordingly.

Plaintiff contends that the proposed use meets the definition of an "apartment hotel" and a "lodging house," both of which are permitted uses in an R–7 District. Plaintiff claims that there was ample proof showing that the R–1 ordinance was invalid insofar as it prevented the use of the subject property for R–7 purposes and that the record and evidence before the trial court was directed toward the use of the subject property in accordance with the R–7 District provisions of the ordinance. Plaintiff, on this appeal, says it is "seeking a use which is permitted under the R–7 classification."

The status of the pleadings as amended presented the issue squarely. Could plaintiff use its property for the construction of an apartment hotel for senior citizens based upon its plans and in accordance with all applicable provisions of the City Building Code?

Upon reviewing the proof adduced, we find the evidence was predicated upon a request to use the property for an apartment-like hotel for senior citizens, and was limited to the type described in plans submitted but rejected by the court.

Plaintiff introduced drawings captioned "Apartment Hotel for Senior Citizens" that were ordered by M. Marc Stuart on behalf of the beneficial owner of the property. Stuart testified that the plans represented the development proposed by plaintiff.

Philip Gross, a building contractor, called by plaintiff, testified he had the plans prepared. He gave a detailed description of the proposed building and its dimensions saying: "In this case we are limiting the units to the relatively small number of 50 units but designed primarily to accomplish the purpose of providing economical housing for senior citizens supposedly to come under the FHA requirement. We were primarily interested in the purpose of the building before we considered the zoning, whether R–6 or R–7."

Dominic Dunn, a real estate appraiser said that the highest and best use was for multiple apartment buildings, but when giving his opinion as to the difference in value of the property, if restricted to a single family use, as compared to another use, he considered as the other use the proposed development submitted by plaintiff.

Finally, George H. Kranenberg testified that, in his opinion the highest and best use from a zoning and planning standpoint, under existing conditions, was for multiple occupancy. After describing plaintiff's

proposed plan in detail, he said that development of the property for an apartment hotel was, in his opinion, a permitted use in an R–7 District. He further stated that the construction of the proposed development would have no impact on the surrounding area.

The permitted uses under an R–7 general residence district zoning far exceed the requested and proven proposed use. It is our opinion that on appeal, plaintiff seeks far greater relief than it did at the trial level.

In Reeve v. Village of Glenview, 29 Ill2d 611, 195 NE2d 188 (1963), the land owner attacked a single family residence zoning and proposed to develop the property for unspecified uses permitted under "C" neighborhood business district classification of the ordinance. In reversing the decree that held the single family residence zoning void, the Supreme Court said (p 616): "[T]he court had no authority to impose the business use classification on the subject property. Courts have authority to pass upon the validity of a zoning ordinance, but this does not include the legislative function of determining the ultimate zoning classification of the area. (National Brick Co. v. County of Lake, 9 Ill2d 191, 137 NE2d 494.) An exception to this rule was laid down in Sinclair Pipe Line Co. v. Village of Richton Park, 19 Ill2d 370, 167 NE2d 406, where we held the court empowered to avoid undesirable results by framing its decree with reference to the record before it. However, the Sinclair case and others following it were cases in which the evidence showed the specific proposed use of the property. Where the record fails to show any evidence of the use proposed, this rule does not apply. In the instant case, the record is wholly devoid of any evidence of proposed use. The reference to a gasoline filling station and a drug store in appellees' brief is of no evidentiary value or assistance. The instant

case affirmatively shows that the general classification of 'C' neighborhood business district is unsuitable as established by the plaintiffs' own witnesses. The court here had no authority to decree that a particular use was permissible since the record failed to support such a finding".

The decree appealed from in the case at bar sought to impose on the subject property a general R–7 classification, after a determination had been made by the trial court that the existing R–1 zoning classification was arbitrary and void. Although the court in the Reeve case ruled that the residential zoning classification before the court was valid, we nevertheless, hold the statement quoted above applicable to the case before us without further determination as to whether the proof adduced here sustained the finding that the R–1 classification was, in fact, void.

The instant case was argued below, as the record indicates, on the theory that the highest and best use of the subject property for which it was to be used, was that of an apartment hotel. The court rejected the plans and specifications for that use, and plaintiff seeks no cross appeal from that finding. In view of the rule announced in the Sinclair case, the court was required to frame its decree with reference to the record before it. The record is devoid of any evidence upon which the court could properly impose a general R–7 use classification. Having rejected the specific proposed use to which the property was to be put, there remained no basis upon which to predicate a rezoning of the subject property.

Were we to rule otherwise, plaintiff would be allowed to do indirectly what the court had ruled it could not do directly, or apply the property to a use less restrictive than that warranted by the pleadings and proof. Thus, we hold that the trial court had no legal basis to substitute its judgment for that of

377

the legislative body of the city when it declared plaintiff had a right to any use permitted in an R-7 zoning district.

For the reasons herein given the judgment order entered below is reversed.

Reversed.

BURMAN, P. J. and MURPHY, J., concur.