ROY MACK *et al.*, Appellees, *vs.* THE COUNTY OF COOK, Appellant.

*Opinion filed May 23, 1957.*

BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (GORDON B. NASH, CHARLES D. SNEWIND, MARTIN R. HANDLEMAN, ROBERT G. MACKEY, and EDWARD J. FLEMING, of counsel,) for appellant.

FRANK M. OPEKA, of Chicago, for appellees.

Mr. CHIEF JUSTICE KLINGBIEL delivered the opinion of the court:

The county of Cook appeals from a decree of the circuit court of Cook County holding a zoning ordinance unconstitutional and void in its application to a 50-acre tract of vacant land owned by plaintiff Roy Mack. A portion of the tract is under contract of sale to plaintiff Betty Lehman.

The property is situated in an unincorporated area of Elk Grove Township in Cook County. It lies on the north side of Touhy Avenue, a State-aid through-traffic highway extending a distance of about 15 miles in an easterly and westerly direction from the lake shore to a junction with Higgins Road about 1000 feet west of the subject property. There is a frontage on Touhy Avenue of 1107.48 feet, and a depth of 1962.44 feet. Plaintiffs desire to use the land for a motel, bowling alleys, a trailer sales lot, a trailer park and light industrial purposes. By the zoning ordinance enacted in 1940 it was given an "F" farming classification, under which the uses are restricted to those permitted in R-3 residence districts and to animal farms, apiaries, mushroom barns, greenhouses, nurseries, dog kennels, removal of soil, recreational camps and other specified activities not including light industry or general businesses of the kind proposed by plaintiffs. The circuit court held that as applied to the plaintiffs' property the ordinance is unreasonable, discriminatory and void. On this appeal the county contends that there is a reasonable basis for the restriction, and that the legislative judgment should not be disturbed.

The decree is based upon the findings and recommendations of a master, who heard the evidence. From his undisputed findings it appears that while the area within a mile radius consists principally of farm land, the land in the vicinity of the subject property is becoming and is considered to be choice industrial property. During the period while the hearings were being held, 40 acres on the northwest corner of Touhy Avenue and Mt. Prospect Road (the first intersection to the east of the subject property) were rezoned for heavy industrial use. Immediately adjoining the subject property to the east, and on the north side of Touhy Avenue, is the Ravenswood Airport. To the east thereof between this airport and Mt. Prospect Road is a tract of vacant land bisected by the Chicago and North Western Railroad right of way. There is a farm house situated at the southeasterly extremity of this tract of land. East of Mt. Prospect Road and north of Touhy Avenue is a series of eight large greenhouses. South of the subject property and of Touhy Avenue going west from Mt. Prospect Road is a farmhouse with outbuildings, and farm land which extends to the railroad right of way. Then, west thereof is a recently constructed corrugated iron building, one story in height with a central tower. It is used for the manufacture of concrete blocks. To the east thereof is another such establishment, both being located at a distance of about 400 feet from the subject property. Immediately to the west of these plants, and across the road from the subject property, is a commercial nursery covering about 35 acres, with retail sales facilities on the easterly portion thereof. West of the land used by the nursery, at the southwest corner of Touhy Avenue and Elmhurst Road (the first intersecting road west of the subject property) is a restaurant and a tavern. Further west, on Higgins Road, is another restaurant. The intersection of Higgins Road and Touhy Avenue is about 1000 feet from the subject property. Immediately south of these structures, is a trailer

court of some 25 or 30 trailers. South of the trailer court on the east side of Elmhurst and approximately one-half mile removed from the subject property is the Material Service Company's sand and gravel operation where ready-mix concrete is prepared and dispensed. Also the Rock Road Mixing Plant is located there, its operation being the mixing of black top for road building. South from the subject property, a few hundred feet from Touhy Avenue, is another mixing plant: the Black Top Mixing Plant.

At a point approximately 1400 feet south of the southeast corner of the subject property is the most northerly extremity of O'Hare Field, an airport used by the United States Air Force as well as commercial airlines. In its overall aspect it lies about one-half mile to the south. On one side of Higgins Road, and within approximately 1000 feet of the subject property, is a single home. Also on this side of Higgins Road is the Allied Asphalt Paving Company. It occupies an area of some 10 acres, enclosed by a wire fence, where asphaltic materials are processed.

West of the subject property, and north of Touhy Avenue, near the northeast corner of Touhy Avenue and Elmhurst Road are a restaurant and tavern. These are located approximately 900 feet from the subject property. West of Elmhurst Road and north of Higgins Road is a trailer sales. There are two operations adjoining immediately to the west thereof: first, a restaurant, and then a gasoline station. Immediately west of that is an Elk Grove elementary school, beyond which is some scattered farm and home development. North on Elmhurst Road and on the west side, within 1200 feet of the northwest corner of the subject property, is a natural gas storage tank station. Gas being piped in from the west is stored here in underground containers. On the west side of Elmurst from the storage tank area up to Oakton Street (the first road north of the subject property) there are a couple of farm houses; and at the intersection with Oakton there are gaso-

line filling stations at the northeast and southwest corners.

On the north side of Oakton, which is a leg of State Route 83, and about a mile from the subject property, are two tank farm stations, one labeled Sinclair, and the other Texaco. That property is occupied by a major administration building together with about twelve large storage tanks, 40 or 50 feet in height. North of Oakton and east of Elmhurst Road is open farm land, interspersed with farm structures and green houses. Further north and easterly are the residential areas of Des Plaines, with some new manufacturing establishments located on the north side and south side of Algonquin Road, which is State Route 62. North of Algonquin and east of Mt. Prospect is the Universal Oil Products Company's large scientific research laboratory, and an office building. South of Algonquin Road and slightly to the east is the Illinois Tool Company's plant. These are within the corporate limits of the village of Des Plaines. The Universal Oil Products Company occupies 56 acres, on which are located two large buildings and several smaller ones. It is a large industrial oil-refining-plant engineering operation.

The master's report includes other findings of a similar nature, but enough has been referred to here to show the general character of the neighborhood. Expert witnesses testified for the plaintiffs that there is no market for farming or residential purposes; that use of the land for farms and homes is no longer economically feasible; that the establishment of a trailer camp on the present site would not decrease the value of surrounding property, and that the highest and best use of the subject property is for commercial or industrial purposes. The master concluded that neither residential nor farming uses are developing in the area; that the development and trend have been for industrial uses; that land in the area is in great demand for industrial and business purposes; and that the present zoning restrictions cause irreparable loss and damage to the

plaintiffs without any bearing on the public health, safety, morals, comfort and welfare.

The question whether a zoning ordinance in its application to a given parcel of land is a reasonable exercise of the police power is subject to review by the courts, each case requiring a determination based on its own particular facts. There is a presumption, of course, that an ordinance adopted pursuant to a legislative grant is valid; and the person assailing its validity has the burden of proving it to be arbitrary or unreasonable. (*First National Bank* v. *County of Lake,* 7 Ill.2d 213.) Among the factors to be considered in deciding the question are the use and zoning of nearby property, the character of the neighborhood, the extent property values are diminished, and the relative gain to the public as compared to the hardship imposed upon the owner. (*Krom* v. *City of Elmhurst,* 8 Ill.2d 104; *Hannifin Corp.* v. *City of Berwyn,* 1 Ill.2d 28.) Upon consideration of all the testimony, together with the exhibits in this record, it is evident that the predominant uses of surrounding property are for business and industrial purposes, and that many of the nearby parcels are so classified. In determining the validity or invalidity of a given zoning classification, the question whether or not it is in conformity with surrounding existing uses and the zoning classification of nearby property is considered of paramount importance. (*First National Bank* v. *County of Lake,* 7 Ill.2d 213, 228.) While much of the area is still farm land, the evidence is clear that it is characterized more by the increasing use for industrial purposes.

It is not contended that the ordinance protects or conserves other property values in the area, nor does the evidence show any appreciable use for residential purposes. Evidence for defendant consists of the testimony of Donald M. Campbell and Milton W. Worsek, together with a zoning map and certain aerial photographs introduced as exhibits. Campbell, an employee in the county's building and

zoning bureau, whose duties include the preparation of maps and the recording of changes in the maps and master plan, explained the various districts shown on the zoning map and described the land uses in the area. Worsek, a real-estate broker and appraiser, testified that the subject property has a value of $400 or $500 an acre for farm purposes and about $8500 per acre for light industry use. He stated further that its highest and best use for the present would be for farming, and that its use for light industry or business would affect "the natural growth of surrounding property which could eventually become residential." He admitted on cross-examination that while he had made sales of acreage within a mile of the property for light industrial use, he had not sold any within three miles for farm purposes; that the top soil had been removed from the subject property and "in my opinion that ground is not satisfactory for farming;" and that "there is no residential development" within the section of land in which the subject property is located.

The evidence is undisputed that for industrial or commercial use the subject property has a value many times that which it would have if restricted by the present classification; and while defendant contends the ordinance is needed "to control high density development of undeveloped areas" and to protect the public health, there is no showing of evidence to support the argument. Defendant relies instead upon the presumption of validity, arguing in general terms that "the industrialization of this area has gone far enough" and that "there is every reason to expect an eventual development along lines infinitely preferable to those proposed by plaintiffs." We think the plaintiff's evidence sufficiently shows that the property in question is characterized by surrounding industrial and commercial uses and its desirability as an industrial site; and that enforcement of the ordinance greatly impairs its value without affording any appreciable gain to the public. In such

cases it is incumbent upon the other party to adduce evidence of some actual relation to the proper objects of the police power. Where a destruction of value occurs the test to be applied is whether the destruction in fact promotes the public health, safety, morals or general welfare. (*Krom v. City of Elmhurst,* 8 Ill.2d 104, 115.) Applying such test to the evidence in this record we find nothing to indicate a public need for the destruction in value of plaintiffs' property. The decree of the circuit court was correct and is accordingly affirmed.

*Decree affirmed.*