**La Salle National Bank of Chicago, a National Banking Institution, as Trustee Under Trust No. 27892, Plaintiff-Appellee, v. Village of Skokie, a Municipal Corporation, Defendant-Appellant.**

Gen. No. 49,930.

First District, Third Division.

July 1, 1965.

Rehearing denied September 16, 1965.

Marvin J. Glink, Corporation Counsel, and Morton C. Kaplan, Assistant Corporation Counsel, of Skokie, for appellant.

Brody & Gore & Louis Dennen, of Chicago, for appellee.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

This involves an appeal from a declaratory judgment entered in the circuit court of Cook County

declaring that a B–2 commercial zoning of the property involved was arbitrary and unreasonable.

The plaintiff herein prior to the filing of the action unsuccessfully sought administrative relief from the village.

The defendant contends in this appeal that the classification of the subject property as B–2 commercial was a proper legislative determination of the village, and that the plaintiff had failed by clear and affirmative evidence to prove that the zoning of plaintiff's property was arbitrary or unreasonable.

The subject property fronts on Dempster Street at the northeast corner of Lockwood Avenue and Dempster. It lies just east of the four-leaf clover interchange of Edens Expressway at Dempster Street in the village of Skokie. According to one of defendant's exhibits the Dempster Street frontage is approximately 103 feet and runs to a depth of 113 feet on Lockwood Avenue. Dempster Street through the village of Skokie is a primary arterial thoroughfare with six lanes of traffic. To the east of the subject property on the north side of Dempster lies a vacant parcel of ground with 50 feet of frontage on Dempster. To the east thereof is a parking lot with approximately 300 feet frontage on Dempster, which lot extends north to an alley located approximately halfway between Enfield and Dempster Streets. The parking lot is used in conjunction with a bowling alley, restaurant and cocktail lounge which extend east from said lot to the intersection of Dempster and Laramie Avenue, one block from the subject property, and north on Laramie to Enfield Street, one block north of Dempster Street. East of Laramie on the north side of Dempster there is a Standard Oil Service Station, a parcel of vacant land, and then a Chrysler Motors dealer offering automobiles for sale and service. Continuing east for a distance of approximately ¾ of a mile from the sub-

84

ject property the uses on the north side of Dempster are all business, and the zoning is classified as B–3. To the west of the subject property, across Lockwood Avenue, there is the Dempster-Edens interchange. To the west of the interchange, continuing into the village of Morton Grove, there is a Shell Station on the north side of the street at the corner of Central Street, and for a distance of two miles west to Waukegan Road the uses are business. On the south side of Dempster Street, immediately across from the subject property, there is a public park which extends east to Laramie. East of Laramie, on the south side of Dempster, there is a cleaning establishment, then two forty-year-old residences, to the east of which is a business building containing an electrical contractor, then a pizza pie dispensary, an automobile parts company, and a Bulko Service Station, which is located on the corner of LeClaire and Dempster. Continuing east on the south side of Dempster Street there is unbroken business zoning and uses extending to Skokie Boulevard. Going west of the subject property on the south side of Dempster there is the interchange, and approximately 800 feet west of the subject property is Central Road, at which point there is a Sinclair Service Station. Continuing west for about two miles to Waukegan Road there is unbroken business use and zoning, except for a small parcel devoted to public use which is a forest preserve. The first street to the north of the subject property is Enfield, which runs between Laramie and a point approximately 200 feet west of Lockwood, where it comes to a dead end at Edens Expressway. This street is improved on both sides with homes of an average value of approximately $25,000. Between Skokie Boulevard and Waukegan Road, on Dempster Street, the two residences previously described are the only residential uses presently in

85

existence, and these two homes are situated on property zoned for B–3 use.

At the time plaintiff instituted this declaratory judgment action the subject property was zoned R–2 in the single family residential classification. After the plaintiff had completed its case before the master, to whom this case had been referred, and prior to the offering of proof by the defendant, the village rezoned the subject property, as well as the entire north and south sides of Dempster between Laramie and Edens Expressway, to a B–2 commercial classification. A real estate witness for the plaintiff characterized Dempster Street as a business street on both sides for a distance of approximately 2½ miles. The subject property is located on one of the busiest interchanges in the metropolitan area of Chicago. The parking lot to the east of the subject site is lighted with mushroom-shaped fixtures because the bowling alley and restaurant are open twenty-four hours a day. The evidence does not disclose how long the cocktail lounge is open each day. That lighted parking lot is separated from the subject site by only 50 feet. The traffic on Dempster Street is between 20,000 and 25,000 cars per day.

The plaintiff sought by this action and obtained by the judgment entered below the right to construct a gasoline filling station on the subject site. The testimony for the plaintiff showed that if the zoning were changed to permit the property to be used for a gasoline filling station it would have a value of approximately $56,000. The plaintiff paid $37,500 for the property. There is evidence that the property zoned for B–1 or B–2 use is worth approximately $200 per foot. Under B–2 zoning a gasoline station is not a permissive use, however, at the time of the construction of the bowling alley, cocktail lounge and restaurant,

86

in the years 1956 and 1957, a gasoline filling station was a permitted use under the B–2 commercial district zoning ordinance of the village of Skokie. The property occupied by the bowling alley, cocktail lounge and restaurant was zoned B–2 at that time. On September 12, 1959 the gasoline filling station use was taken out of the B–2 commercial district use and transferred to a B–3 business district use.

This is not a case in which the court is asked to invade a residential area with a nonresidential use. The municipality has already invaded this area by changing the residential zoning to a B–2 commercial district. A city planner who testified for the defendant stated that Dempster Street through Skokie is a primary arterial thoroughfare and that the highest and best use of the subject property would be an extension of the use which lies to the east, namely, off-street parking.

A real estate witness for the defendant testified that there were in the B–2 classification, in which the plaintiff's property had been placed before his testifying, permitted uses which might be considered deleterious to the area, such as an animal hospital, a dry cleaning plant, taverns, music schools, dancing schools, laundries, tire repair shops and used car lots, subject to special requirements. He further testified that it seemed to him that those uses generate enough noise and enough other nuisances to be not particularly advisable for a site that adjoins a good quality single family residential area such as that on Lockwood Avenue. Despite the opinion of this real estate appraiser, the village of Skokie had by its own ordinance rezoned the subject property to permit those uses.

Another defense witness testified that he lived at 5235 Enfield, Skokie, which is located immediately behind the bowling alley parking lot. He further

testified that he had been subjected to nuisances from the standpoint of noise, the opening and closing of doors of cars and car trunks, and litter from the parking lot being cast over the fence into his property. He further testified that the lights on the bowling alley are so bright that he had been forced to put up awnings, because his bedrooms face the alley. He further stated that a gasoline station, in his opinion, would not help the situation. Apparently his chief complaint is against the operation of the existing parking lot, the noise and the lights from the bowling alley.

Several of the neighbors living on Enfield testified for the defendant to the effect that when they purchased their homes they did so relying upon the existing zoning on Dempster Street. This zoning, however, has been changed by the legislative authority of the village of Skokie in apparent disregard for the feelings of the owners of property on Enfield Street.

The evidence showed that there is very little pedestrian travel on Dempster Street at this location, and that no business could, in effect, rely upon the pedestrian travel.

There was the usual testimony that the installation of a gasoline filling station at this location would do damage to some property in the neighborhood, and there was evidence offered by the plaintiff that any deleterious effect on surrounding properties has already occurred because of the commercial establishment built to the east of the property, the parking lot, the entrance to Edens Expressway west of the subject site, and the high traffic count on Dempster Street.

A witness for the plaintiff testified that the foregoing had already established the character of the property on Dempster Street, and that any effect on the surrounding neighborhood to the north had already been felt.

There was evidence offered by the plaintiff before the zoning had been changed by the defendant village to the effect that the subject property would have a value of from $2,000 to approximately $8,000 for residential purposes.

■ The findings of a master, when approved by the trial court, have the same binding force on the reviewing court as a jury verdict, and if so approved will not be disturbed by the reviewing court unless they are against the manifest weight of the evidence. 2 ILP, Appeal and Error, Section 791; Allendorf v. Daily, 6 Ill2d 577, 129 NE2d 673; Ginther v. Duginger, 6 Ill2d 474, 129 NE2d 147; Anastaplo v. Radford, 14 Ill2d 526, 153 NE2d 37.

The judgment order entered in this case was based upon the findings of the master in chancery, which findings were approved by the trial court. It, therefore, becomes incumbent upon us to determine whether the judgment order entered herein is against the manifest weight of the evidence.

The master found that the Comprehensive Zoning Ordinance of the Village of Skokie, and its amendment on November 19, 1963, as it affected the plaintiff's property, was an undue restriction on said property and any public benefit resulting from such restriction was highly doubtful. He further found that the present zoning classification of the subject property bore no substantial or reasonable relation to the public health, safety, morals or general welfare. The master further found that there was no convincing evidence that residential property to the rear of the subject property, and separated from it by an alley, would suffer by the presence of a gasoline service station, in view of the other commercial uses in the area, specifically, the restaurant, bowling alley and parking lot use which is presently existing to the east of the subject property.

In Mack v. County of Cook, 11 Ill2d 310, 315, 142 NE2d 785, 788, the court said: "Among the factors to be considered in deciding the question are the use and zoning of nearby property, the character of the neighborhood, the extent property values are diminished, and the relative gain to the public as compared to the hardship imposed upon the owner. (Krom v. City of Elmhurst, 8 Ill2d 104, 133 NE2d 1; Hannifin Corp. v. City of Berwyn, 1 Ill2d 28, 115 NE2d 315.)"

The factors to be considered in determining the validity of a zoning ordinance have too often been repeated by the courts to require that they be set forth herein. However, it has been held that no one factor is controlling but that each must receive due consideration. La Salle Nat. Bank v. County of Cook, 12 Ill2d 40, 145 NE2d 65.

One of the questions before us is whether the subject property takes its character from the main street upon which it is located or from the residential property to the north. In the case of People ex rel. Chicago Title & Trust Co. v. Reiter, 25 Ill2d 41, 45, 182 NE2d 680, 682, the court said:

> "Despite the presumption of the validity of the zoning ordinance, the record in this case reveals that the village of Skokie, by the zoning ordinance amendments of 1946 and 1957, has created residential classifications without regard to the existing uses on Dempster Street. The provisions of the present ordinance are not justified nor required by any consideration of public health, safety, morals and welfare. Defendants contend that the property facing on Dempster Street takes its character from the residential developments to the north and south of Dempster. However, considering the fact that Dempster is devoted exclusively to business with the exception of the

90

pocket here involved, it is apparent the character of this property comes from Dempster Street itself rather than from the residential property lying to the north and south. (Stratford Aire Ass'n v. Hibser, 26 Ill App2d 214.) In the case of Zilien v. City of Chicago, 415 Ill 488, we condemned the singling out of certain blocks for business and alternate blocks for commercial use, especially when there is no evidence to show any reason related to the public good for such 'leap-frogging pattern.' . . . The only real result of the ordinance is that it grants special privileges to a few property owners, without relation to the general public welfare, and is therefore invalid as applied to the plaintiff's property. . . . It appears here that zoning prohibiting a commercial use is confiscatory and unconstitutional."

The foregoing case involved land on Dempster Street in the same defendant village.

In La Salle Nat. Bank v. Village of Skokie, 26 Ill2d 143, 186 NE2d 46, the court concluded that the property took its character from the trend of development along Niles Center Road, and that the alley between would constitute a sufficient dividing line, since the west half of the blocks is on the periphery of the residential development.

In the instant case, as in People ex rel. Chicago Title & Trust Co. v. Reiter, supra, we believe that the evidence justified a finding that the subject property took its character from Dempster Street rather than from the residential development to the north. Dempster Street, in the vicinity of the subject property, is devoted to business uses including a number of gasoline service stations. As in La Salle Nat. Bank v. Village of Skokie, supra, the alley between the subject property and the residential development to the north would constitute a sufficient dividing line, since the homes

on the south side of Enfield are on the periphery of said residential development. There can be no doubt that the R–2 classification, under which the subject property was zoned at the time of filing of the suit herein, was arbitrary and unreasonable and bore no relation to the public health, safety, morals and welfare. The question remains whether or not the evidence warranted the chancellor's finding that the B–2 classification, which applied to the property at the close of the case, was also invalid.

In Ward v. Village of Skokie, 26 Ill2d 415, 186 NE2d 529, the plaintiffs were the owners of land fronting on Skokie Boulevard between Jerome Street and Birchwood Avenue. The plaintiffs desired to erect a motel thereon. Their property was situated in a B–2 commercial district in which motels were permitted under the Skokie zoning ordinance as it existed prior to October 1, 1957. On that date an amendment was adopted whereby motels were removed from the list of permitted uses in a B–2 district. The village contended that the reasonableness of the ordinance was fairly debatable, and the trial court erred in not finding that the subject property took its character from the residential area to the west, with which a motel use would be incompatible. The court therein said on page 418:

> "We cannot accept the contention. The commercial character of Skokie Boulevard in the vicinity of this property is beyond dispute, and on this record the presence of single-family residences to the west, and the nearby location of a school, do not make reasonable the prohibiting of a use entirely in keeping with such commercial character."

See also Hartung v. Village of Skokie, 22 Ill2d 485, 177 NE2d 328.

92

Similarly, in the instant case, we believe that, considering the business character of Dempster Street and the presence of numerous gasoline service stations in the vicinity of the subject property, the use of such property for a gasoline service station would be entirely in keeping with such commercial character. The presence of single family residences to the north does not make reasonable the prohibition of such use.

The defendant cites the case of Hoffmann v. City of Waukegan, 51 Ill App2d 241, 201 NE2d 177, in support of the contention that lack of community need for the use for which the property was sought to be rezoned is a proper consideration in determining zoning classifications for property. That case involved the question as to whether there was a need for either a shopping center or apartments which were contemplated, since there were more than enough of such facilities available generally. On page 245 the court said:

"In connection with the consideration of the relative gain to the public, it is not inappropriate to consider also the lack of a community need for the uses for which the property is sought to be rezoned. While these would not in themselves be conclusive factors, the circumstance that there are substantial apartment facilities in the area as shown by the record, and that no community need for the commercial facility was shown, were obvious factors which in part, may have motivated the legislative body in denying the proposed rezoning."

██ In the instant case the defendant has pointed out that there are a total of fifteen gasoline service stations on Dempster Street within the corporate limits of the defendant village. One witness had testified that in his opinion the number of existing gasoline service stations on Dempster Street are sufficient to serve the needs of the community. Obviously, a gaso-

93

line filling station on an arterial highway such as Dempster Street does not rely upon the community as its source of customers. The 20,000 or 25,000 motor vehicles a day passing this site are not all from the immediate community, and we do not feel that it is the office of this court to determine the feasibility of using the subject property for a gasoline service station from an economic standpoint.

For years the subject property was zoned R–2, a single family residence use, whereas, in the same block to the east the property fronting on Dempster was zoned for a B–2 commercial use, under which use a gasoline filling station was permitted until the year 1959. The village waited until after the plaintiff in this case had concluded its evidence before rezoning the subject property to make it available for certain commercial uses not including a gasoline filling station.

██ One of defendant's witnesses testified that the value of plaintiff's property under the present zoning classification is $37,500. This is the price which the beneficiary of plaintiff's trust paid for the property. A plaintiff's witness testified that for use as a gasoline service station it would be worth approximately $56,000. It is true that in most zoning cases an increase in the value of the owner's property would result if the court held that the zoning ordinance was invalid as applied to such property. It is also true that the amount of loss occasioned to the owner by the ordinance is only one factor to be considered, and the zoning will be upheld if there is an offsetting gain to the public in maintaining the present zoning, or if it can be shown that such zoning bears a reasonable relation to the public health, welfare, safety or morals of the community. We are of the opinion from the

94

evidence in this case that damage has already resulted to the residential property on Enfield Street, on which the residences front, by reason of the operation of the bowling alley, restaurant, cocktail lounge and parking area which, with the exception of the cocktail lounge, are open twenty-four hours a day, and which front on Dempster Street, from which street the subject property takes its character. So far as noise is concerned, the noises that emanate from the parking lot all night have already reflected harm to the residential property owners, and have diminished the value of their property. We believe that the evidence justified a finding that a gasoline service station would not substantially increase this effect, and prohibiting such use would bear no reasonable relation to the public health, welfare, safety or morals of the community.

We now come to the question of what use can the plaintiff make of its property under the present zoning classification. The city planner, who testified for the defendant, stated that, in his opinion, the highest and best use of the subject property would be an extension of the use of the property lying to the east, which is off-street parking. It is significant to note that the owner of the bowling alley testified that he had attempted to purchase the subject property for the purpose of extending the present parking lot but was unable to do so. It is also significant we think that this owner of the bowling alley, which, together with the restaurant and the extensive parking lot, is open twenty-four hours a day, was a witness for the defendant and opposed the plaintiff's contemplated use of the subject property, even though the zoning covering his property at the time he constructed his building permitted the construction of a gasoline service station. The parking facilities in question are the

95

same ones which many of the witnesses stated have a deleterious effect on the residential property to the north. We will not speculate as to the motives of the owner of the existing parking area in appearing on behalf of the defendant village as a witness in opposition to the plaintiff.

One real estate witness who testified for the defendant expressed the opinion that a good restaurant on this lot would attract many automobiles. He further stated that in general about twice as much space is needed for parking as a building would cover. He then suggested a 5,000 square foot restaurant or an office building of similar dimensions. These statements appear, on their face, to be contradictory. He had already testified that there were approximately 11,700 square feet in the subject site. If a 5,000 square foot building were to be constructed on the site, the space left for parking would not be equal to twice the area of the building. The plaintiff would be in a dilemma as to what use could be made of its property if it were to rely on the recommendations of some of the witnesses for the defendant.

■ We believe that, because of the limited amount of foot traffic at this location, the plaintiff could make practically no use of its property by the construction of a building, since there would not be sufficient parking space for the customers or tenants. Suitability of property for uses permitted under existing zoning restrictions is a factor which should be afforded great weight in determining the reasonableness or unreasonableness of the ordinance.

■ Because of the doubts that the evidence in this case has created as to the way in which the subject property might be utilized to advantage under the present B–2 classification, and because we are of the

opinion that the decision of the trial court is not contrary to the manifest weight of the evidence, the declaratory judgment order herein is affirmed.

Affirmed.

DEMPSEY, P. J. and SCHWARTZ, J., concur.