**Chicago Title & Trust Company, a Corporation, as Trustee Under Trust No. 21830, et al., Plaintiffs-Appellees, v. The Village of Wilmette, a Body Politic and Corporate, Defendant-Appellant.**

Gen. No. 50,486.

First District, Fourth Division.

January 7, 1966.

Rehearing denied February 9, 1966.

Philip R. Toomin and George H. Redding, Jr., both of Chicago, for appellant.

Ross, Hardies, O'Keefe, Babcock, McDugald & Parsons and John M. Daley, all of Chicago (Richard F. Babcock and Malcolm Mecartney, Jr., of counsel), for appellees.

MR. PRESIDING JUSTICE DRUCKER delivered the opinion of the court.

The defendant, The Village of Wilmette, appeals from a decree in chancery, based upon the recommendation of the Master in Chancery, declaring that its zoning ordinance is arbitrary, oppressive, prohibitory, discriminatory and confiscatory as regards plaintiffs' property. Defendant in appealing directly to the Supreme Court urged that a substantial constitutional issue was presented and in particular that the following novel issues were involved:

"(a) Whether despite an admitted lack of need for change, such change may be imposed by a court.

(b) Whether an owner whose property is successfully devoted to a conforming use, may join with neighboring owners differently circumstanced, in order to devote their collective properties to a common use.

(c) Whether this court [the Supreme Court] should hold this case because of its 1963 decision approving service station use on the opposite corner."

The Supreme Court transferred the case to the Appellate Court.

Plaintiffs filed a petition with The Village of Wilmette by which they sought the rezoning of three separately owned parcels of land from an R–3 Group House classification to B–2 General Business to permit the erection and construction of a gasoline service station. Pursuant thereto a hearing was held by the Special Zoning Committee of the Village which denied plaintiffs' request. The decision of that committee was affirmed by the Village Board after which this action was instituted. The subject property, considered as one tract, lies at the southeast corner of the intersection of Lake Avenue and Skokie Boulevard within the Village of Wilmette. It is almost a truncated triangle in shape, having a frontage of 151.16 feet on Lake Avenue, 237.36 feet on Skokie Boulevard, a southerly line of 68.75 feet and an east line of 247.43 feet. One of the corners has been rounded off where a traffic curve from Skokie Boulevard to Lake Avenue was installed. Parcel 1 is vacant and consists of the southeast corner of Skokie Boulevard and Lake Avenue; parcel 2 is also vacant and has frontages on Lake Avenue and Skokie Boulevard; parcel 3 is improved with an old frame residence which fronts on Lake Avenue and has an old frame garage, 12′ 2″ x 18′ 1½″, on the easterly side of its lot about 119 feet south of Lake Avenue. Plaintiffs propose leasing the subject parcels,

328

which taken together consist of approximately 31,500 square feet, * to the Standard Oil Company.

The block in which this property is located is itself triangular in shape with frontages on Lake Avenue, Skokie Boulevard and Hibbard Road and is zoned as an R–3 Group House district. Within that block, to the east of parcel 3, is a group house containing six dwelling units situated at a right angle to Lake Avenue so that its front faces west across parcel 3. Proceeding east there are located three old single family residences which face Lake Avenue and at the southeast corner of Lake Avenue and Hibbard Road there is a new group house consisting of four units facing Hibbard Road. South on Hibbard Road facing Hibbard is a Public Service Substation, two group houses situated at right angles to Hibbard Road, then unimproved land followed by three group houses situated on a triangular parcel formed by the crossing of Skokie Boulevard and Hibbard Road; none of these buildings fronts on Skokie Boulevard; they are either at right angles to Skokie Boulevard or face Hibbard Road. Proceeding northwesterly along the east side of Skokie, north of the last mentioned group houses, there is an old residence facing Skokie Boulevard, then "Hammond Gardens" where vegetables and nursery products are sold (a nonconforming use), then group houses siding on Skokie Boulevard. There is a community of parking and recreation facilities between the group houses on Hibbard Road and those on Skokie Boulevard which are adjacent to one another. Next is the subject property.

Approximately two blocks west of the subject property Lake Avenue crosses over the Edens Expressway at right angles, via an overpass. Cloverleafs constructed at the overpass connect Lake with the expressway and

---

* The approximate square footage of each parcel is as follows: parcel 1–1,500; parcel 2–12,000; parcel 3–18,000.

it appears that this is the only point of access to and egress from the expressway in the village. The result has been extremely heavy traffic on Lake which is building up year by year. Running northwesterly from its intersection with Lake, Skokie Boulevard also intersects Edens Expressway a quarter of a mile away at the northern village limit.

On the northwest corner of Skokie and Lake there is a large tract of land which is occupied by the Edens Plaza Shopping Center which fronts on the west side of Skokie Boulevard and the north side of Lake Avenue and has about 23 retail businesses and parking facilities for over 1,000 cars. The stores in the area operate each day except Sunday, and three nights a week. Throughout the parking area, which is the specific part of the business district diagonally across from plaintiffs' land, there are lights which are illuminated on nights the center is open.

At the southwest corner of the intersection of Skokie Boulevard and Lake Avenue there is a triangular parcel of land which has about 180 feet of frontage on Skokie Boulevard and is improved with a gasoline service station which sells Marathon brand gasoline. Adjoining the Marathon station on the south, and extending along the west side of Skokie for about 1,500 feet, is a residential development known as Wilcrest Manor, which has been built since the development of the shopping center and the heavy traffic pattern at Lake and Skokie. The residences in this subdivision are all constructed so as to face away from Skokie Boulevard and are shielded from Skokie by a seven foot stockade fence. At the intersection of Skokie Boulevard and Wilmette Avenue, approximately one-half mile south, three of the corners are occupied by gasoline stations and the fourth is occupied by a retail drugstore.

At the northeast corner of the intersection of Skokie Boulevard and Lake Avenue there is an eight acre tract

which is occupied by the Thalmann Nursery, also called the Chalet Gardens, which is in part improved with a building in which nursery products, gardening supplies and tools, gifts, pet supplies and the like are displayed and sold, has outdoor display of articles for sale, parking facilities for about 70 cars, and outdoor nurseries. To the north of the Thalmann property along the east side of Skokie Boulevard is the Skokie Valley Baptist Church. Next are some residences, all of which back up to Skokie Boulevard and front on interior streets to the east of Skokie Boulevard and have high stockade fences along Skokie Boulevard. On the easterly portion of the Thalmann property, facing the north side of Lake Avenue and across the street from a portion of the subject premises, there is a single family residence building which is also used by Thalmann as an office. Next (east) there are six single family residences, the most easterly of which is at the corner of Hibbard Road.

Evidence was introduced by both parties as to the effect on the group houses adjacent to the subject property if a service station were built thereon. Plaintiffs' witness, Manke, testified that the group house to the east would not be adversely affected because its recreation area is to its east and there is and will be effective screening, that these are rental units and tenants are less selective than owners. Plaintiffs' other witness, Edelberg, testified that the depreciatory effect on the town houses had already taken place when they were developed with the commercial uses and traffic patterns in the area, that the group house to the east already looks out on the Marathon gasoline station, the shopping center, the nursery and a considerable amount of traffic movement at the intersection. Defendant's witness, Witkowsky, testified that the proposed service station would adversely affect the entire group house to the east and two units of the group house to the south. He stated that a gasoline station on the subject property

331

would depreciate the row house to the east 20% of its present value, and the one to the south, 5 to 10%. Defendant's witness, Farr, testified that the entire building to the east and three units in the building to the south of the subject property would be adversely affected, with a total depreciation of 15%. Both witnesses for the defendant admitted that no other property would be affected by a gasoline station on the subject property.

■ The Supreme Court of Illinois in Chicago Title & Trust Co. v. Village of Wilmette, 27 Ill2d 116, 188 NE2d 33, recently held unconstitutional the defendant village's zoning ordinance as it affected the property directly across the street from the subject property, located at the southwest corner of Skokie Boulevard and Lake Avenue and consisting of an area of 28,000 square feet (the Marathon station now being located thereon). In its opinion at pages 123, 124 the court fully enumerated the applicable standards in determining the constitutionality of a particular zoning classification and consequently repetition thereof is not required herein. Plaintiff contends that the aforementioned case is controlling upon the instant case because the properties are directly across the street from each other, both were zoned for "group housing" in the ordinance and the proposed use in each instance was for a gasoline station. Certainly that case provides guidelines for our decision here. Referring to the traffic conditions and the desirability of housing at the intersection of Skokie Boulevard and Lake Avenue, the court stated that:

> Skokie is also a heavily traveled thoroughfare and traffic counts taken in 1959 and 1960 showed that in the neighborhood of 25,000 vehicles pass through the Lake-Skokie intersection in the course of 24 hours. For the years 1957 through 1960 there have been, respectively, 25, 14, 25 and 19 accidents at the intersection.

. . . . . .

The tremendous volume of traffic at the intersection and the extensive commercial uses at two of its corners are factors which in themselves do much to cause the property to be unfit and undesirable for residence purposes and demonstrate the unreasonableness of the classification. Indeed, those building residence properties in the immediate area have taken great pains to orient and isolate their properties away from the traffic and commercial uses, . . . . We have consistently held that zoning ordinances restricting an area to residential use are void as applied to property within the area which is so situated in relation to a commercial zone as to render it peculiarly unattractive and of little value for residential use. (Citing cases.)

· · · · · ·

We would add, too, in looking to the reasonableness of defendant's regulation, that the same considerations did not deter it from permitting, by special ordinance, a commercial use of the Thalmann property located at the northeast corner of the intersection.

We hold that case to be controlling as to the suitability of group houses oriented towards the intersection of Skokie Boulevard and Lake Avenue. Defendant contends, however, that the aforementioned case is not controlling upon the disposition of the issues before this court in the instant case since group houses can be constructed on the subject property which are oriented away from the intersection. In support of its contention defendant asserts that the adjacent residential uses are oriented towards the subject property in that the front doors, picture windows and living and dining areas of the townhouses adjoining the subject property to the east and the living room, picture windows and master bedrooms of the townhouses adjoining to the south face directly across

333

the subject property. But, as respects the group houses to the east, the Master found that:

> There is a line of shrubbery along the west line of this group house which is designed to mask the view westerly toward the house and garage on subject parcel 3 which this group house faces. The masking does not extend up to the second story. . . .

Referring to the group houses to the south the Master in his conclusion stated:

> [I]t is admitted that only . . . some of the units in the group house to the south will suffer a dollar depreciation in his property in a limited percentage. . . .

Defendant introduced into evidence a proposed offer to purchase the subject property for $35,000 for the construction of group houses and two plans prepared by the Building Commissioner of the village to use the property for that purpose. Those plans as set forth in the Master's Report are as follows:

> (T)he Building Commissioner of the Village prepared two possible layouts for group house usage of the subject parcels (assuming the use of the three parcels as a whole); one alternative is ten units in three buildings (two buildings of 4 units each and one building of two units); the other is 9 units in two buildings (one building with four units and one building with five units).
>
> (A) Both plans contemplate one building situated parallel to Lake Avenue, but make no determination whether the front or rear shall face Lake Avenue.
>
> (B) One plan contemplates a second building parallel with Skokie Boulevard, but makes no determination whether the front or rear shall face Skokie Boulevard.

(C) The other plan contemplates a second and third building; each situated at right angles to the building parallel to Lake Avenue and open to Skokie Boulevard, but makes no determination of whether the fronts or rears shall face Skokie Boulevard.

(D) None of these buildings would be situated so as to side on Skokie Boulevard or Lake Avenue.

(E) In each plan, the parking places would be at the east of the buildings and along the present group house to the east, and in the instances of those buildings south of the building proposed to parallel Lake Street [Avenue], the dwelling units would have to face either Skokie Boulevard or their parking areas.

Upon finding that the group houses which could be constructed pursuant to the only plans submitted by defendant would be undesirable dwellings, the Master in his conclusion stated that:

The use of the subject property would not assure the group house dwelling units to the east a completely pleasant view since the proposals for group houses on the subject site contemplate parking spaces adjacent to these east dwelling units. The vista of a parking lot would not be agreeable, and there would be [a] possibility of invasion of the privacy of these residents, lights and noise from cars—slamming of doors—by and from the users of the proposed parking lot. The patent answer is that the group house to the east must furnish its own screen no matter what the use of the subject property. . . .

The Master in concluding that the subject property "takes its characteristics from its street frontages and cannot turn its back on these frontages for a desireable [sic] use which can avoid the burdens of the nonresidential uses opposite its frontages" also stated:

335

If it did attempt to create frontages away from these street frontages, the artificial frontages would necessarily face its parking spaces, and the burdens of the commercial intersection and the commercial uses at the other three corners would still be there to affect its rear windows.

The witnesses for both sides gave similar definitions of the "highest and best use" of the subject property in the economic sense, but differed in their application of that term to the subject property. There was no divergence of opinion, however, as respects the greater value of the subject property taken as a whole if used for a gasoline station over that if used for group houses. Commenting on the reason for these differences the Master stated in his findings that:

The differences in application by these witnesses is that the witnesses for the plaintiffs considered the questions of appreciation in value from gas station use to the plaintiffs and of depreciation, if any, from such use to surrounding or adjacent properties; thus they found appreciation in the value of the subject property and little or no depreciation to adjoining properties; the witnesses for the defendant ignored appreciation of the subject property and considered only the question of depreciation to the surrounding or adjacent properties, and they were of the opinion that the group house to the east of subject parcel 3 would be depreciated and that two or three units of the group house to the south of parcel 3 would be depreciated.

■ ■ Defendant contends that the propriety of the zoning classification of parcel 3 should be considered separate and apart from that of the remaining parcels, asserting first that each parcel is separately owned; second, that there are substantial differences between

336

the surrounding uses and influences which bear upon the respective parcels; and third, that parcel 3 has been improved with a conforming residential use for many years. It is undisputed, however, that throughout this litigation plaintiffs have regarded the subject parcels as a single tract for the purpose of common development since they did not consider parcels 1 and 2 by themselves to be of sufficient size for use as a service station. The reasonableness or constitutionality of an existing zoning classification as it applies to specific property is determined in light of the proposed use of that property. LaSalle Nat. Bank v. City of Chicago, 61 Ill App2d 369, 209 NE2d 858. Therefore, since the proposed use encompasses all three parcels, the parcels were properly considered as one tract.

 Defendant also contends that since there was no testimony of need for an automobile service station on the subject property, plaintiffs have not established that the existing zoning classification as respects the subject property is unconstitutional. No authority is cited by defendant to this effect. In Hoffmann v. City of Waukegan, 51 Ill App2d 241, 201 NE2d 177, where the plaintiff sought to have her property rezoned to permit the construction of a shopping center and apartment house, the court stated that community need was a relevant, though not conclusive, factor. In the recent case of LaSalle Nat. Bank of Chicago v. Village of Skokie, 62 Ill App2d 82, 210 NE2d 578 (decided since the briefs were filed in the instant case), the court allowed the plaintiff to erect a gasoline service station, stating that:

> [W]e do not feel that it is the office of this court to determine the feasibility of using the subject property for a gasoline service station from an economic standpoint.

Therefore, even if a consideration of need is relevant, it is only one of the numerous factors to be considered

337

herein. No single factor is controlling. Chicago Title & Trust Co. v. Village of Wilmette, 27 Ill2d 116, 188 NE2d 33.

■■ The evidence in the instant case amply supports the Master's conclusion that the character of the subject property is controlled by the commercialized intersection of Skokie Boulevard and Lake Avenue; that the "highest and best use" of the subject property is for the proposed gasoline station; and that therefore the R-3 zoning classification is unconstitutional as respects plaintiffs' property. The findings and conclusions of the Master, approved and adopted by the Chancellor, will not be disturbed unless they are manifestly against the weight of the evidence. LaSalle Nat. Bank of Chicago v. Village of Skokie, supra; Atkins v. County of Cook, 18 Ill2d 287, 163 NE2d 826. The judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

McCORMICK and ENGLISH, JJ., concur.