684

HOWARD J. LEICHNER *et al.*, Plaintiffs-Appellants, *v.* THE CITY OF CHAMPAIGN, Defendant-Appellee.

(No. 11219; )

Fourth District—November 19, 1970.

TRAPP, J., dissenting.

Robert F. Scott and Charles Tisckos, both of Springfield, for appellants.

Albert Tuxhorn and James W. Evans, both of Champaign, for appellee.

Mr. PRESIDING JUSTICE CRAVEN delivered the opinion of the court:

The plaintiffs are the owners of three lots, situated in the City of Champaign, and sought unsuccessfully, through administrative and legislative channels, to have the lots rezoned. This is an action seeking to restrain the City from enforcing the zoning ordinance as to the plaintiffs' property. The circuit court denied the requested relief, and this appeal is from that denial. We affirm.

The three lots owned by the plaintiffs face on Neil Street adjacent to the northeast corner of Neil Street and the north city limits of the City of Champaign. Neil Street runs north and south and the city-limit line east and west. The plaintiffs' lots are within an area zoned multiple-family residence under the zoning ordinance of the City and that area has been continuously zoned for residential use since 1926. In the area north of the city limits, along the extension of Neil Street, there are a number of properties used for commercial purposes including a Gulf gasoline service station, a 207-unit Holiday Inn, and a trailer court. Immediately north of the subject property is an area used and occupied as light industrial by the Leichner Manufacturing Company. The area to the east and west of the subject property (all in the City of Champaign) is zoned R-4, multiple-family residence, and there is no commercial zoning on Neil Street (on the east side of the street) for a distance of five blocks.

Plaintiffs' property is improved with a single-family residence on the center lot which they acquired in 1939. The area to the west, south and east is zoned and used for residential purposes. At the time the plaintiffs acquired their property the area immediately north was vacant, undeveloped and outside the City. Municipalities in Illinois did not then have, nor did they acquire until 1961, authority to regulate land use on an extraterritorial basis. A 4½-acre tract north and adjacent to the plaintiffs' property was acquired by them in the 1940's and the plaintiffs constructed the Leichner manufacturing plant thereon which they owned and operated. Although it has now been sold, such sale was subsequent to the filing of this complaint.

In 1962, the City exercised its authority as to extraterritorial zoning and by an ordinance then adopted, it zoned the area where the manufacturing plant was then located as light industrial, and the area across from its where the Gulf station and the Holiday Inn are located was

zoned B-3, intermediate commercial. The then zoning classification was in accord with the existing use, and it is clear that any classification more restrictive would have resulted in nonconforming uses as to the light industrial and intermediate commercial zones. Neil Street was extended and widened, and at a point some seven hundred or eight hundred feet north of the south line of plaintiffs' property it joins with Interstate 74. The widening and resurfacing of Neil Street has substantially increased the flow of its traffic. The area on both sides of Neil Street, for a distance of five blocks south of the plaintiffs' property, is zoned residential and use as such. From that point south there is commercial usage in varying degrees.

This record shows that the City of Champaign has adopted and adhered to a plan for the development of Neil Street, retaining in the area of the plaintiffs' property and south thereof its residential classification. The record demonstrates that since 1960, at least four other requests for zoning reclassification have been denied. In fact, in 1960, the plaintiff Howard J. Leichner appeared and opposed a requested reclassification, and in so doing enunciated and endorsed the reasons apparent for the City's tenacious adherence to its zoning and planning.

In this case—as is so often true—the plaintiffs have an opportunity to sell the single-family residence and the two adjoining lots to an oil company for purposes of establishing a gasoline service station. There is an option for such sale at a price of some seventy-two thousand dollars, which is more than twice the general range of appraisal if used for residential purposes. In this case, also—as is true in most zoning cases—there is conflict in the testimony as to the highest and best use of the property, its relative value as zoned and under a zoning change, and the depreciation, if any, that would follow such a change upon the adjoining residential area. We will not extend this opinion by detailing that testimony.

■■ A presumption exists in favor of the validity of a zoning ordinance, and it is well-established and we need not cite authority for the proposition that one who seeks to overcome this presumption must do so by clear and convincing evidence. It is not enough to establish a difference of opinion, nor is it enough to establish that the trier of fact in a zoning case might, if sitting as a legislative body, subject the property to a different zoning classification. Rather, it is necessary that the classification, as legislatively established, be shown to be unreasonable and invalid in order that complaint against the zoning ordinance acquire constitutional dimensions.

■■ In this case there is no question but that the extension, widening

and connection of Neil Street with Interstate 74 have substantially increased traffic. As we see it, however, that alone is not a factor of such overriding importance as to invalidate the ordinance. (See: *Jans v. City of Evanston* (1st Dist. 1964), 52 Ill.App.2d 61, 201 N.E.2d 663; *Viggiano v. City of Elmhurst* (2nd Dist. 1966), 67 Ill.App.2d 140, 213 N.E.2d 571.) A residential zoning classification is not invalid simply because property fronts on a heavily traveled street. *Cosmopolitan Nat'l Bank of Chicago v. Village of Mount Prospect* (1961), 22 Ill.2d 463, 177 N.E.2d 365; *Elmhurst Nat'l Bank v. City of Chicago* (1961), 22 Ill.2d 396, 176 N.E.2d 771; *Menolascino v. Village of Franklin Park* (1st Dist. 1969), 106 Ill.App.2d 472, 246 N.E.2d 122.

As to the industrial use to the north, it is appropriate to note that the plaintiffs created one of the industrial uses at a time when the defendant-City was without power to stop it. They lived in their house which was near the industrial use they created. Consequently, here, as in *Merchants Nat'l Bank of Aurora v. City of Aurora,* (2nd Dist. 1970), 119 Ill.App.2d 179, 255 N.E.2d 609, the argument which the plaintiffs now make that the property is not suitable for residence use because of this fact is, as observed by Mr. Justice Davis in *Merchants Nat'l Bank of Aurora,* "somewhat diluted." The plaintiffs rely upon *Scott v. City of Springfield* (4th Dist. 1967), 83 Ill.App.2d 31, 226 N.E.2d 57. The facts in the *Scott* case, in our opinion, are substantially different. In that case we specifically noted that the municipality induced and encouraged a commercialization trend over many years on the street involved. There the City did not follow a plan for transitional zoning but rather the record demonstrated a propensity to negate any plan by repetitive spot-zoning. Such is not demonstrated by the record here. Likewise, the case of *Hartung v. Village of Skokie* (1961), 22 Ill.2d 485, 177 N.E.2d 328, is not here analogous. In *Hartung* there is an indication of unsuitability for use as zoned.

■■ In the instant case it is clear that the property would have more value if rezoned or if an injunction is issued restraining the enforcement of the present zoning. The fact that the property would have more value if it could be used for purposes not permitted by the existing zoning is not determinative of the validity of the zoning. *Rebman v. City of Springfield,* (4th Dist. 1969), 111 Ill.App.2d 430, 250 N.E.2d 282, and cases there cited.

■■ The existing zoning classification is not demonstrated by this record to be unreasonable, invalid or confiscatory. The property can be and is being used as zoned. It has substantial value for that use. The zoning ordinance is reasonably related to the public health, morals, safety and

welfare, and the action of the trial court in refusing to enjoin the enforcement of the zoning ordinance was correct and is affirmed.

Judgment affirmed.

SMITH, J., concurs.

Mr. JUSTICE TRAPP, dissenting:

The record before us amply and substantially demonstrates that the zoning imposed in this case is arbitrary and unreasonable. The area of Neil Street concerned is accurately albeit perhaps inadvertently characterized as a "corridor" in a "policy report" prepared by the City Plan Commission.

Neil Street has long been a principal commercial and industrial thoroughfare in Champaign. When purchased, plaintiffs' property was just within the northern city limit, separated from business and industry by some six blocks of residence property. The pavement there merged into a country road at the city limit. Virtually no traffic of any description was present.

The nature and quality of the street has undergone a vast change by reasons of the acts and sanctions of the public authorities incident to the development and completion of Interstate Route 74 and the widening of Neil Street to make it a principal arterial connection between the city and such route. As pointed out in the majority opinion, the statutory zoning beyond the city limits zones for light industrial and intermediate commercial use for a distance of approximately 1.3 miles. So far as can be found there is no provision for any residential zoning on Neil Street north of the city limits.

The principal opinion does not explicitly note the nature and the fact of the changes during the ten years preceding this action which has, in fact, made plaintiff's property unsuitable for residential use.

Widening Neil Street to produce a four-lane arterial way moved the east line of pavement to within ten or twelve feet of the front of the house. There is no parking available for guests of those residing on the street. It is agreed that in excess of 8600 vehicles use the way with traffic particularly intense during the morning and evening hours. Witnesses in the same block or across the street testify that it is very difficult to enter or leave their respective premises in their automobiles—they frequently must sit for minutes before traffic permits entering the street.

The evidence is that Neil Street is the principal and most direct route between Interstate 74 and the city business district, and that heavy commercial vehicles use it 24 hours a day. It connects with the route by an elevated interchange with the results that trucks going north are ac-

celerated to increase power in ascending the interchange, while vehicles which enter Champaign are accelerated after descending into Neil Street from the interchange.

The uncontradicted testimony is that a formidable and intolerable level of noise and vibrations results. The residences are caused to vibrate so that pictures are shaken askew on the wall; that houses must be continuously closed to keep out the noise, but that even with such steps it is difficult to sleep and almost impossible to enjoy the domestic amenities of the television and radio throughout the day or night. The plaintiffs testify that they are forced to live in the rear of their home to minimize the noise and vibration. The hardship to the owners is plain and uncontradicted. (*Chicago Title & Trust Co. v. Vil. Wilmette*, 27 Ill.2d 116, 188 N.E.2d 33. Great weight is to be given to the suitability of the use as zoned. *Hartung v. Village of Skokie*, 22 Ill.2d 485, 177 N.E.2d 328; *La-Salle Nat. Bank v. Village of Skokie*, 62 Ill.App.2d 82, 210 N.E.2d 578.) It has been noted that extraterritorial zoning by the city to the north of Route 74 on and along Neil Street has been commercial and industrial. If it develops as so zoned, there can only be an increase and aggravation of the conditions making the property unsuitable for residence purposes. By reason of such massive changes provided by the public authorities after the purchase of plaintiffs' property, this property truly takes its character from the primary arterial street on which it is located. *La Salle Nat. Bank v. Village of Skokie*, 62 Ill.App.2d 82, 210 N.E.2d 578.

The arbitrary and unreasonable action of the city is demonstrated in several following particulars: In 1968 a block on the east side of Neil Street, being the fifth block south of that of the plaintiffs, was reclassified from residential to commercial. The municipal authorities have further encroached upon any zoning benefits which might be enjoyed by plaintiffs. When their land was purchased plaintiffs were at the north end of six blocks of single family residences. In 1965 the fourth and fifth blocks to the south were reclassified as R-5, which classification contemplates rooming and boarding houses. Plaintiffs' property and the two blocks south of it were zoned R-4. It seems to contemplate town houses and row houses. The record discloses no development of this quality in the area whatsoever, and the economic feasibility of using a small area of improved property for such development is not suggested by the evidence. The traffic noise and vibration making the area unsuitable for residences would persist. These lots do not possess access to another street as was disclosed in *Chicago Title & Trust Co. v. Village of Wilmette*, 27 Ill.2d 116, 118 N.E.2d 33, where the court noted that "group houses" were oriented upon another street, and could be physically screened from the traffic.

It has been said that zoning classifications are designed to create permanent conditions. (*Western T. Bldg. Corp. v. Village of Palatine,* 102 Ill.App.2d 116, 243 N.E.2d 566.) The "corridor study" of 1968 for the City Plan Commission demonstrates that such is not the objective of the zoning here. Amongst other things, it notes the program of the Champaign Development Corporation to encourage investment in the downtown area and improve access to such area. It anticipated the industrial development along Neil Street north of Route 74. It is stated that a "major impact" of such development would be that the traffic on Neil Street would increase in direct proportion to the success of the redevelopment and improvement programs. The report notes and emphasizes the "deterioration" of the property in the "corridor". The two blocks to the south of the one in which plaintiffs reside are rated at about 15 per cent sub-standard; the block to the southeast is rated 16 to 30 per cent substandard, as are the second and third blocks on Neil Street. Farther south the successive blocks are 31 to 50 per cent and over 50 per cent sub-standard respectively. The report suggests that deterioration should be permitted to persist expecting that there will be pressure for redevelopment in another ten years. This is not zoning to create permanent conditions.

Defendant argues that a gasoline station would be detrimental to traffic on Neil Street. Upon these facts, the position is not persuasive. Such use would not create traffic as would the commercial use added in 1968 four blocks to the south. As noted in *Chicago Title & Trust Co. v. Village of Wilmette,* 27 Ill.2d 116, 188 N.E.2d 33, virtually the same result would occur from the ingress and egress of cars to "group houses" as authorized by the present zoning. In *Hartung v. Village of Skokie,* 22 Ill.2d 485, 177 N.E.2d 328, it was noted that a motel would have a minimal effect on the traffic on the adjacent streets. The "corridor study" notes specifically that the actual impediment to traffic arises from the east-west arterial streets which cross Neil Street to the south of plaintiffs' property.

The cases which are said to support the principal opinion do not encompass the factors shown in this record, and we note particularly the factors of change of conditions and the detriment imposed upon the zoned use. In *Jans v. City of Evanston,* 52 Ill.App.2d 61; 201 N.E.2d 663, there was no evidence of change of conditions resulting from municipal action and no concrete evidence of physical detriment and diminution of value of the owner. In *Menolascino v. Village of Franklin Park,* 106 Ill.App.2d 472, 246 N.E.2d 122, there was no evidence of altered circumstances affecting the zoned use. In *Viggiano v. City of Elmhurst,* 67

Ill.App.2d 140, 213 N.E.2d 571, the property was not situated on the thoroughfare which carried the traffic of which complaint was made. There was no evidence of detrimental interference with the owner's use and the property is described as being a part of a fine residential area. In *Cosmopolitan Nat. Bk. v. Mt. Prospect*, 22 Ill.2d 463, 177 N.E.2d 365, the property had been purchased by plaintiff as zoned, there was no evidence of change of use of the street, no evidence that the traffic caused actual detriment to the use as zoned and there was extensive new building for such zoned use rather than deterioration. Virtually the same factors distinguish *Elmhurst Nat. Bank v. City of Chicago*, 22 Ill.2d 396, 176 N.E.2d 771, from this case.

The determination of whether the zoning classification is reasonable, or arbitrary and unreasonable, is always a question upon the particular facts and circumstances of the case. (*Trust Co. of Chicago v. City of Chicago*, 408 Ill. 91; 96 N.E.2d 499.) The issues in this type of litigation are primarily concerned with variations in facts. *Weglarz v. The Village of Villa Park*, 21 Ill.2d 202, 171 N.E.2d 609.

As we understand the report of proceedings, the trial court in his colloquy concluded that the commercial use sought here would not increase detriment to other property on Neil Street as such injury had already been imposed. His conclusion that residential uses on streets west of Neil Street would be impaired is not persuasive in view of the character of the intervening Neil Street as shown in the evidence.

Defendant produced one appraisal witness purporting as to show detriment to residential property on the street east of Neil Street. He was a member of the Zoning Board of Appeals of Urbana. His testimony may be measured in the light of his opinion that Neil Street was a desirable residential street in certain areas. Such opinion is contrary to all the testimony concerning the "corridor", and if the opinion was directed to other areas on Neil Street not in evidence, the witness chose to be evasive.

The principal opinion suggests that the fact that plaintiffs first constructed an industrial use outside of the city limits should be considered in denying relief to them. All testimony is that plaintiffs constructed an attractive building that, as we understand it, has been effectively screened by trees and shrubs. There is no complaint that it had impaired values on Neil Street, or adjoining streets, and no evidence that it produced traffic.

As we read the trial court's statement there is adequate evidence showing that plaintiffs' property is, in fact, depreciated in market value. Under the evidence, the zoning imposed is clearly unreasonable and is an abuse

of discretion in that the relative gain to the public is slight as compared to the economic and physical hardships imposed upon the plaintiffs and the suitability of the property for the purpose zoned. *People v. Village of Elmwood Park,* 27 Ill.2d 177, 188 N.E.2d 684.

Where municipal authorities create substantial changes which materially alter the quality of the zone use, any presumption of the validity of the zoning classification is nullified. *Citizens National Bank & Trust Co. v. Village of Mt. Prospect* (1st Dist. 53914), (Ill.App.2d); *Scott v. City of Springfield,* 83 Ill.App.2d 31; 226 N.E.2d 57. The record moreover discloses that such changes in condition impose detriment and hardship on plaintiffs which is not common to most other property owners in the zoned area. *Jacobson v. City of Evanston,* 10 Ill.2d 61; 139 N.E.2d 205.